Ashima REED, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA, Defendant.

Civil Action No. 14–1887 (JEB)

United States District Court,
District of Columbia.

Signed September 28, 2015

. Douglas Tyrka, Tyrka & Associates, LLC, McLean, VA, for Plaintiffs.

Tasha Monique Hardy, Office of Attorney General, Washington, DC, for Defendant.

### MEMORANDUM OPINION

JAMES E. BOASBERG, United States District Judge

Reasonable attorney fees must be "adequate to attract competent counsel," but should not "produce windfalls to attorneys." *Blum v. Stenson,* 465 U.S. 886, 893–94, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citation omitted). Six Plaintiffs, who are parents and legal guardians acting on behalf of their children, have brought this action for the recovery of attorney fees and costs—pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*—incurred in administrative proceedings against the District of Columbia Public Schools. Ruling on Cross–Motions for Summary Judgment, Magistrate Judge Alan Kay, to whom the case was referred, issued a Report and Recommendation

granting approximately 40% of the total fees sought. Plaintiffs have now submitted their Objections to that Report. Finding that the Report largely applies the IDEA appropriately in calculating the correct amount due, the Court will accept the majority of its recommendations, albeit with some modifications.

## I. Background

The Court will not reiterate the full factual background of the case, which is set out in the thorough Report. *See* R & R at 140–44. A brief recap here concerning each Plaintiff will suffice.

### A. *S.R.*

Plaintiff Reed, parent of minor student S.R., filed a Due Process Complaint in May 2013, alleging that S.R. was denied a free appropriate public education (FAPE) due to the District's alleged failure to identify, locate, and evaluate him as a student with a suspected disability. Reed requested, *inter alia,* that the District fund independent and comprehensive assessments of S.R. and convene an individualized-education-program (IEP) team to review such assessments and determine S.R.'s eligibility for special-education services. A due-process hearing was held that summer, and the Hearing Officer ordered the District to fund the requested assessments and determine whether S.R. was indeed eligible for special-education services. *See* R & R at 140–42; Pl. MSJ, Exh. 1 (Hearing Officer Determination (HOD)) at 1–11.

### B. *C.G.*

C.G. is an adult student who has been determined to be eligible for special-education and related services as a student with a disability under IDEA. His parent, Plaintiff Green, filed a Due Process Complaint in February 2013, alleging that the District failed to conduct re-evaluations, develop and implement an IEP, and provide appropriate placement. A hearing was held in May 2013, after which the Hearing Officer determined that the first issue was fully resolved and thus withdrawn, and that Plaintiff had satisfied his burden of proof on the remaining issues. *See* R & R at 141–42; HOD at 17–29.

### C. *L.J.*

L.J. is a minor student who is eligible for services due to a learning disability. His legal guardian, Plaintiff Smith, filed a Due Process Complaint in June 2013, and the due-process hearing was held in September of that year. Smith alleged that, on numerous occasions, the District had failed to evaluate L.J. at his request. The Hearing Officer determined that L.J. had been denied a FAPE through the District's failure to evaluate him and awarded L.J. individualized tutoring by a certified teacher. *See* R & R at 141–42; HOD 39–63.

### D. *I.M.*

I.M. is a minor student who is eligible for services due to a learning disability. Her parent, Plaintiff Addison, filed a Due Process Complaint in February 2013, alleging that the District failed to: include her in an IEP meeting; re-evaluate I.M. upon request; conduct a formal, timely assessment of I.M.'s therapy needs; provide I.M., on four separate occasions, with an appropriate IEP; implement I.M.'s IEP; and place I.M. in a full-time special-education program. She sought placement in a private special-education school, compensatory education, and funding for various evaluations. A two-day hearing was held in April 2013, after which the Hearing Officer determined that I.M. had satisfied her burden of proof on some, but not all, of these allegations. While the Hearing Officer rejected the request for compensatory education, he did award I.M. some relief, including amending her IEP and providing extra-curricular instruction and tutoring,

as well as additional evaluations. *See* R & R at 142–43; HOD at 66–82.

### E. *E.J.*

Plaintiff James, parent of minor student E.J., filed a Due Process Complaint in June 2013, alleging that the District failed to: provide E.J. an appropriate, or any, educational placement in 2011–2012; provide an appropriate placement in 2012–2013; identify an appropriate placement at a June 2013 meeting; and adequately include E.J.'s parents in the decisionmaking process. E.J. sought maintenance of his current educational placement, a meeting to revise his IEP, and compensatory education. E.J. received a hearing in August 2013. The Hearing Officer ruled in E.J.'s favor on all but the second issue and ordered that the District fund E.J.'s placement for the 2013–14 year. *See* R & R at 143–44; HOD at 87–117.

### F. *A.D.*

Plaintiff Holman, legal guardian of minor student A.D., filed a Due Process Complaint in September 2013, alleging that the District failed to implement an IEP and provide him with an appropriate placement. A.D. requested funding for an independent evaluation, an IEP meeting, and placement in a particular school program. A hearing was held in December 2013, after which the Hearing Officer determined that the District had denied A.D. a FAPE by failing to implement the speech-language services portion of his IEP, and the Officer ordered the District to fund the requested assessment, as well as a year of speech-language services. The Officer further determined that A.D. had not met the required burden of proof to support the claim that the District had failed to provide an appropriate placement. *See* R & R at 143–44; HOD at 120–38.

### G. *Attorney Fees*

Following the conclusion of these administrative proceedings, Plaintiffs filed this action on November 10, 2014, and the case was subsequently referred to Magistrate Judge Kay for full case management. *See* ECF No. 4. Both sides thereafter filed Cross–Motions for Summary Judgment relating to fees and costs only. On June 2, 2015, Magistrate Judge Kay issued his Report recommending that Plaintiffs' Motion be denied and Defendant's be granted. Plaintiffs timely filed their Objections to the Report on August 13, 2015.

### II. Legal Standard

Under Federal Rule of Civil Procedure 72(b), once a magistrate judge has entered a recommended disposition, a party may file specific written objections. The district court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Winston & Strawn LLP v. FDIC*, 841 F.Supp.2d 225, 228 (D.D.C.2012) (court must conduct *de novo* review of objected-to portions of magistrate judge's report and recommendation). The district court may then "accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3).

### III. Analysis

The purpose of IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A). "Implicit" in IDEA's guarantee "is the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200, 102 S.Ct. 3034, 73 L.Ed.2d

690 (1982). As a condition of receiving funding under IDEA, school districts are required to adopt procedures to ensure appropriate educational placement of students with disabilities. *See* 20 U.S.C. § 1413.

Of relevance to this case, IDEA confers on the Court discretion to "award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party" in an action under the Act. *See* 20 U.S.C. § 1415(i)(3)(B)(i)(I). This includes the authority to award fees to a party who has prevailed in an administrative due-process hearing. *See Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C.Cir.1990).

Plaintiffs brought such an action, seeking a total of $226,625.31 in legal fees and costs for their six IDEA matters. *See* Compl. at 3 (Appendix). The Magistrate Judge recommended significant reductions to this amount, arriving at a total award of $89,917.60—roughly 40% of the requested fees. *See* R & R at 154–57. Plaintiffs raise five objections to the Report's recommendations: (1) the hourly rate of compensation is inappropriately low; (2) billed hours were improperly reduced in accordance with Plaintiffs' success rate; (3) settlement conference and work hours deemed "too remote in time" were improperly excluded; (4) expense charges were improperly reduced; and (5) current, not historical, rates should have been used. The Court considers each objection in turn.

### A. *The Hourly Rate*

The issue at the heart of this case is what constitutes a reasonable hourly rate by which the Court should calculate fee awards for IDEA matters in the District. Plaintiffs object that the Magistrate Judge recommended an inappropriately low rate. Although its reasoning diverges somewhat from the Report, the Court concurs that the rate is justified.

### 1. *Recommendation and Objections*

Fee awards under IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose, for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C)). The statute instructs that courts "shall reduce" the quantity of the award if it "unreasonably exceeds the hourly rate . . . for similar services by attorneys of reasonably comparable skill, reputation, and experience" in the community. *Id.* at § 1415(i)(3)(F)(ii). Beyond these dictates, the statute "provides no further guidance for determining an appropriate fee award." *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C.Cir.2015). Our circuit has explained that the "fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates," which entails "produc[ing] satisfactory evidence—in addition to [their] attorney's own affidavits—that [their] requested rates" are appropriate. *Covington v. District of Columbia*, 57 F.3d 1101, 1107–09 (D.C.Cir.1995).

██ Applicants may "submit attorneys' fee matrices as one type of evidence that provides a useful starting point in calculating the prevailing market rate" for attorneys' services. *Eley*, 793 F.3d at 100 (internal quotation marks and citations omitted). A fee matrix lays out hourly fees charged by attorneys at various levels of experience in a particular geographic region or market for the same type of work. "Fee matrices in general are 'somewhat crude,'" including "the *Laffey* matrix in particular," and "[f]or this reason, a fee applicant supplements fee matrices with other evidence such as surveys to update them; affidavits reciting the precise fees that attorneys with similar qualifications have received from fee-paying clients in comparable cases; and evi-

dence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications for handling similar cases." *Id.* at 101.

The "most commonly used fee matrix is the '*Laffey* matrix,'" *id.* which was set forth in *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C.Cir.1984). By its own terms, the *Laffey* matrix applies only to "complex federal litigation" in the Washington, D.C., area. *Id.* at 372. Even within this constraint, moreover, there are multiple *Laffey* matrices. The primary one is calculated by the United States Attorney's Office for the District of Columbia and is updated regularly to account for inflation using the Consumer Price Index. A second *Laffey* matrix, commonly dubbed "enhanced *Laffey*," is adjusted for inflation using only the legal-services component of the Consumer Price Index, which has risen more swiftly than the general CPI. *See Eley*, 793 F.3d at 101–02.

The Magistrate Judge here first determined that the enhanced *Laffey* rate was not appropriate for the litigation at issue. *See* R & R at 148–50. As for the primary *Laffey* rate, he noted that "IDEA cases can rarely be classified as complex federal litigation," *id.* at 24, and then conducted a separate analysis of the complexity of each of the six administrative proceedings. The Magistrate Judge ultimately recommended that in all but one of the matters, the Court should use a rate equivalent to 75% of the primary *Laffey* rate. *See id.* at 25–28. He concluded that the last of the six, however, deserved 100% of that rate. *See id.* at 28.

Dissatisfied with this recommendation, Plaintiffs now mount a valiant, if ultimately unsuccessful, effort to demonstrate that IDEA proceedings *are* "complex federal litigation" meriting compensation at least at full primary *Laffey* rates. They argue

that IDEA litigation requires an understanding of a diverse body of law, familiarity with the relevant regulatory scheme, and subject-matter knowledge specific to special education. *See* Obj. at 3–4. In addition, they contend that the lack of formal discovery in IDEA cases fosters unpredictability, which, in their view, injects additional complexity to preparations for, and arguments at, due-process hearings. *See id.* at 4–5. They point, moreover, to the six declarations attached to their Objections, in which attorneys experienced in IDEA practice opine that such litigation is sufficiently complex to warrant compensation at *enhanced Laffey* rates or close to it. *See id.*, Exhs. 3–7. Finally, they recount two cases where respected "big law" firms, in litigating an IDEA suit much like this one, billed more hours and consulted longer with experts than Plaintiffs did here, and they conclude that "[l]awyers who are not experts in the field apparently find IDEA litigation challenging, however competent they may be in general." *Id.* at 5–6. The Court will examine the relevant law in this circuit and then address these contentions.

### 2. *Leaving Laffey Behind*

At bottom, the question for the Court is whether primary *Laffey* rates, something less (as the Magistrate Judge recommended), or something more (as Plaintiffs insist) should be used in calculating the fee award here. Recently, the D.C. Circuit declined to determine whether IDEA proceedings are the type of litigation that is "sufficiently 'complex' to use either version of the *Laffey* Matrix (and if so, which version of the *Laffey* Matrix is more appropriate)." *Eley*, 793 F.3d at 105. The *Eley* court nevertheless made clear that a district court may not begin its analysis from the premise that "some version of the *Laffey* matrix is presumptively reasonable" because "this reasoning flips the burden of

persuasion on its head." *Id.* That burden, the court emphasized, may be satisfied only by a fee applicant's submission of "evidence that her requested rates are in line with those prevailing in the community for *similar services, i.e.,* IDEA litigation." *Id.* at 104 (internal quotation marks and citation omitted; emphasis original). *Laffey* is thus not the default rate for fees awarded pursuant to IDEA. Rather, if a party wishes the Court to use the *Laffey* matrix, it must establish that its rates reflect what attorneys of comparable skill in the region generally charge for IDEA proceedings.

*Eley* seems, furthermore, to instruct that the relevant inquiry is whether IDEA proceedings *as a class of litigation* qualify as "complex federal litigation" to be compensated at one of the *Laffey* rates—rendering the Magistrate Judge's case-by-case approach improper. And although the D.C. Circuit has yet to resolve this issue, recent concurring opinions buttress the Court's view that the eventual resolution must apply to IDEA cases as a whole. *See id.* at 105 (Kavanaugh, J., concurring) ("I would simply add that, in my view, the United States' Attorney's Office *Laffey* matrix is appropriate for IDEA cases."); *see also Price v. District of Columbia,* 792 F.3d 112, 116–17 (D.C.Cir.2015) (Brown, J., concurring) (opining that, because IDEA proceedings do not constitute complex federal litigation, "the *Laffey* Matrix rate . . . is also an irrelevant benchmark for administrative proceedings before a D.C. Public Schools hearing officer").

In the meantime, district courts within this circuit are split on whether *Laffey* applies to IDEA cases. *Compare Baker v. D.C. Pub. Sch.,* 815 F.Supp.2d 102, 112–13 (D.D.C.2011) ("This court has previously held that attorney's fees in IDEA actions are presumptively reasonable if they conform to the *Laffey* Matrix . . . [and] has already rejected the suggestion that IDEA administrative litigation is categorically less complex than other forms of litigation.") *with Huntley v. District of Columbia,* 860 F.Supp.2d 53, 58 (D.D.C.2012) ("[T]his case involves IDEA litigation, which is *not* complex federal litigation because most if not all of the attorney's fees in question are the result of counsel's preparation for attendance at routine administrative hearings."). *See also McClam v. District of Columbia,* 808 F.Supp.2d 184, 189 (D.D.C.2011) ("Federal district courts in this circuit disagree whether *Laffey* rates should be applied in IDEA cases."). After taking note of this disagreement, the Magistrate Judge determined that all but one of Plaintiffs' matters were insufficiently complex to warrant compensation at *Laffey* rates. Plaintiffs, as previously mentioned, rigorously dispute this.

A central problem with Plaintiffs' objection on this point, however, is that, at most, they suggest that IDEA proceedings are complicated *in some sense.* But they do not establish that such matters are *complex federal litigation,* as they must if they wish the Court to use *Laffey* rates in calculating their award. For *Laffey* did not purport to present a matrix for *all* fee awards under *any* statute. Rather, the plaintiffs in that case sought an award under the Civil Rights Attorney's Fees Award Act, 42 U.S.C. § 1988, for costs incurred during lengthy Title VII litigation. They proposed the schedule of fees that became the *Laffey* matrix and

> support[ed] their request with a barrage of data, including twenty-five attorney affidavits secured specifically for this litigation, information gleaned from affidavits filed in other cases, and fee data reflected in previous judicial decisions, . . . contend[ing] that this documentation establishes that (1) these are the prevailing rates in the community for lawyers of comparable skill, expertise and repu-

tation in complex federal litigation and (2) the prevailing community practice is to charge fee-paying clients in employment discrimination cases the same rates that apply to other complex federal litigation.

*Laffey,* 572 F.Supp. at 371–72. The critical question here, consequently, is whether IDEA proceedings can constitute "complex federal litigation," the linchpin of the *Laffey* matrix.

While neither *Laffey* nor any subsequent D.C. Circuit opinion has defined the precise contours of "complex federal litigation," the Supreme Court has indicated that civil-rights litigation—including challenges to unreasonable searches and seizures, school-desegregation cases, and employment-discrimination actions—as well as antitrust suits are all instances of such litigation. *See Blum v. Stenson,* 465 U.S. 886, 893–94, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (listing cases described in legislative history of § 1988 as "equally complex Federal litigation"). Plaintiffs could, perhaps, establish the applicability of the *Laffey* matrix by proffering evidence that IDEA proceedings are qualitatively similar to—or complex in the same ways as—these types of cases.

This they have not done. Their submissions instead reflect only a pattern of district courts' here awarding *Laffey* rates in IDEA cases on some occasions. This, of course, begs the question; after all, "the mere showing that a high hourly rate was approved in another case does not in and of itself establish" that such a rate is "reasonable." *Huntley,* 860 F.Supp.2d at 58.

■ The Court ultimately does not believe that Plaintiffs have offered satisfactory proof that administrative IDEA proceedings constitute "complex federal litigation" for which *Laffey* rates would be appropriate. In fact, some of Plaintiffs' arguments suggest the opposite. For example, while the lack of formal

discovery in IDEA matters may perhaps necessitate hours of hearing preparation, that preparation is different in kind from the preparation required for complex federal litigation, which involves depositions, interrogatories, requests for production, motions to strike, and the like. The fact that respected "big law" firms—who, Plaintiff agrees, frequently engage in complex federal litigation—billed more hours in preparation for IDEA proceedings than did Plaintiffs' counsel proves little. To begin, the Court has no idea about the complexity of those particular cases, as compared to run-of-the-mill IDEA cases. More important, even if the cases were similar, Plaintiffs' counsel's ability to handle IDEA matters in less time indicates only that successful IDEA practitioners, as one would expect, develop unique proficiencies not required for other complex federal litigation. IDEA matters may not be simple—they may be quite complicated and may even be very labor intensive—but that does not render them "complex federal litigation" as that term is used in the context of fee awards, and specifically the *Laffey* matrix.

As other courts in this district have explained, IDEA proceedings are qualitatively dissimilar to most other complex federal litigation. *See Rooths v. District of Columbia,* 802 F.Supp.2d 56, 62–63 (D.D.C. 2011) ("Like most IDEA cases, the claim on which the plaintiff prevailed in this action involved very simple facts, little evidence, and no novel or complicated questions of law. It was presented in a reasonably informal setting to an administrative Hearing Officer in a two-hour hearing .... [so] a rate considerably below the *Laffey* maximum is appropriate."). The fact that DCPS adjudicates more IDEA disputes than nearly every other jurisdiction—and that some of these disputes make their

way to federal district courts—does not mean that the matters are "complex federal litigation." *Price,* 792 F.3d at 117 (Brown, J., concurring). And erroneously equating administrative IDEA proceedings with complex federal litigation may engender serious adverse consequences. *See, e.g., id.* at 118 (Brown, J., concurring) ("[W]hen courts are too generous in awarding fees, they create an incentive for needless conflict and enrich IDEA lawyers at the expense of public schools, and ultimately the very children the IDEA seeks to protect.").

But if not *Laffey,* then what rates should the Court use? One court in this district explained that "[t]he District has established its own guidelines for hourly rates for IDEA lawyers in the District of Columbia ... [and s]ome courts have applied rates similar to these. For example, in *Rooths,* the court awarded fees at an hourly rate equal to three-quarters of the *Laffey* rate, rates almost identical to the District's guideline rates." *McClam,* 808 F.Supp.2d at 189–90. The notion that a rate equivalent to 75% of *Laffey* rates approximates the prevailing market rate for IDEA administrative proceedings finds support in the vast number of district court cases awarding IDEA fees at this rate. This does not imply that IDEA proceedings are 75% as complex as "complex federal litigation"; the use of this rate means only that the numbers given by 75% of *Laffey* happen to reflect the prevailing market rate in the community for IDEA proceedings.

As the District points out, in recent years, scores of district courts here have awarded attorney fees in IDEA matters using a 75%-of-primary-*Laffey*-matrix rate. *See, e.g., Brown v. District of Columbia,* 80 F.Supp.3d 90, 98 (D.D.C.2015); *Cook v. District of Columbia,* 115 F.Supp.3d 98, 103–04, 2015 WL 4483958, at *4 (D.D.C. July 22, 2015); *Briggs v. District of Co-*lumbia, 73 F.Supp.3d 59, 63–64 (D.D.C. 2014); *Douglas v. District of Columbia,* 67 F.Supp.3d 36, 42–43 (D.D.C.2014); *McAllister v. District of Columbia,* 53 F.Supp.3d 55, 60–61 (D.D.C.2014); *Haywood v. District of Columbia,* No. 12–1722, 2013 WL 5211437, at *6 (D.D.C. Aug. 23, 2013); *Davis v. District of Columbia,* 864 F.Supp.2d 110, 119 (D.D.C.2012); *Flores v. District of Columbia,* 857 F.Supp.2d 15, 22 (D.D.C.2012); *Huntley,* 860 F.Supp.2d at 59–60; *Petway v. District of Columbia,* 858 F.Supp.2d 70, 78 (D.D.C.2012); *Sykes v. District of Columbia,* 870 F.Supp.2d 86, 96–97 (D.D.C.2012); *Wood v. District of Columbia,* 864 F.Supp.2d 82, 92 (D.D.C. 2012). The sheer number of these cases indicates that awarding 75% of *Laffey* will not, contrary to Plaintiffs' apocalyptic prediction, dissuade all competent counsel in the region from taking such cases. *Accord Brown,* 80 F.Supp.3d at 98 ("Because Hecht continues to handle IDEA cases despite this Court on multiple occasions awarding her fees equaling 75% of *Laffey* rates, these rates presumably must be adequate to attract competent counsel."). The Court, accordingly, will adopt the Magistrate Judge's recommendation to use 75% of *Laffey* rates in calculating the fee award in this case.

In their Objection, Plaintiffs also argue that even if the Court decides to adopt the Magistrate Judge's 75% recommendation, it should use rates at 75% of the *enhanced Laffey* matrix. *See* Obj. at 10. But the Court's determination that 75% of primary *Laffey* is equivalent to the "prevailing market rate" in the community for IDEA matters requires the corollary that some other, higher amount—*e.g.,* 75% of enhanced *Laffey*—would overcompensate attorneys in such matters. Furthermore, "in this circuit, the rates contained in the [primary] *Laffey* Matrix are typically treated as the highest rates that will be presumed to be reasonable when a court reviews a

petition for statutory attorneys' fees," and district courts typically "declin[e] to apply enhanced *Laffey* rates." *Sykes,* 870 F.Supp.2d at 94–95 (internal quotation marks and citation omitted).

Finally, Plaintiffs point to *Eley v. District of Columbia,* 999 F.Supp.2d 137 (D.D.C.2013), *overruled on other grounds,* 793 F.3d 97 (D.C.Cir.2015), which determined that a court may not *reduce* a fee award based on the lack of complexity of that particular case. *See id.* at 160 (applying *Perdue v. Kenny ex rel. Winn,* 559 U.S. 542, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010), which held that courts may not *enhance* a fee award based on the complexity of that particular case). *Perdue* reasoned that "the novelty and complexity of a case ... are fully reflected in the number of billable hours." *Id.* at 548, 130 S.Ct. 1662. But that case was concerned with courts' altering the "lodestar" amount—"the number of hours worked multiplied by the prevailing hourly rates"—to reflect the relative complexity or simplicity of a particular case. *Id.* at 546, 130 S.Ct. 1662. Its holding therefore has no bearing on the determination of the prevailing hourly rate used in calculating that "lodestar" figure. The Court, in sum, will employ the 75%-of-*Laffey* rate.

### B. *Rate Cuts for Unsuccessful Claims*

■ Plaintiffs next object that the Magistrate Judge recommended "across-the-board cuts" to their submitted fees "to account for unsuccessful claims" for three plaintiffs. *See* Obj. at 12. IDEA permits the Court to award attorney fees only to "prevailing parties," 20 U.S.C. § 1415(i)(3)(B), and the Magistrate Judge found that the parents of students I.M., E.J., and A.D. had only partially prevailed on their claims. He thus reduced these Plaintiffs' overall fees by various percentages: I.M.'s by 50%, E.J.'s by 30%, and A.D.'s by 50%. *See* R & R at 142–44.

When awarding attorney fees under IDEA, the D.C. Circuit has "articulated a three-part test for determining prevailing-party status: (1) there must be a 'court-ordered change in the legal relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." *District of Columbia v. Straus,* 590 F.3d 898, 901 (D.C.Cir.2010). This pronouncement applies with equal force to administrative proceedings, and "whether [a] Plaintiff is a 'prevailing party' for the purpose of 1415(i)(3)(B) is a question of law that this court will decide based on the administrative record and the hearing officer's decision." *McCrary v. District of Columbia,* 791 F.Supp.2d 191, 196 (D.D.C.2011) (internal quotation marks and citation omitted). The Court addresses each of the three recommended reductions for partially prevailing status in turn.

In their briefing, Plaintiffs acknowledge that I.M. prevailed on only 3 of her 6 claims for relief but argue that more than half of her attorney's time was devoted to the successful claims. *See* Pl. Reply at 15. The Court, however, need not undertake such parsing of the particular claims or the attorney's efforts here; "[g]iven the interrelated nature of the facts and legal theories in this case," the Court enjoys discretion to "refus[e] to apportion the fee award mechanically on the basis of [Plaintiff's] success or failure on particular issues." *Hensley v. Eckerhart,* 461 U.S. 424, 438, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). As Plaintiffs concede that they succeeded on only half of the claims pertaining to I.M., the Court will reduce the fee award here by 50%.

In E.J. and A.D.'s cases, Plaintiffs do not agree that they only partially prevailed. In the former, Plaintiffs argue that they succeeded on both of the two

issues raised—not three of the four issues, as the Magistrate Judge found. *See* Reply at 14. The Hearing Officer did identify four issues, *see* HOD at 89, and grouped two of those four together in his discussion of the case. As the Magistrate Judge correctly noted, the Hearing Officer found in Plaintiffs' favor on three of the four—or two of three, depending on how the issues are grouped. *See* R & R at 143–44. The Court thus believes that, in light of the Hearing Officer's resolution, the recommended 30% reduction for E.J. is reasonable.

In A.D.'s case, Plaintiffs assert that two alternative claims were raised, but "[b]y prevailing on one theory, the Plaintiff won all her requested relief." *See* Reply at 14–15. It is true that the two issues were pled in the alternative, *see* HOD at 122 n.5, but the Hearing Officer found that A.D. had succeeded only partially on the first issue, so it went on to address the second as well. *See id.* at 135. The Officer ultimately concluded that A.D.'s second issue was not meritorious, *see id.* at 137, so the Magistrate Judge did not err in determining that A.D. was not a fully prevailing party. The Court nevertheless believes a 50% rate reduction is excessive, given A.D.'s alternative-pleading approach and the fact that he received most of the relief requested. *Id.* at 137–38; *see also Hensley*, 461 U.S. at 435, 103 S.Ct. 1933 (explaining that, in some cases, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation"). A 30% rate reduction sufficiently accounts for A.D.'s status as a partially prevailing party, so the Court will adopt that rate reduction, instead of the 50% recommended by the Magistrate Judge.

Finally, in both I.M.'s and E.J.'s cases, Plaintiffs believe charges for work related to unsuccessful theories or claims have already been removed. The Magistrate Judge, however, found it "impossible to separate out the charges for legal work related to issues on which Plaintiff did not prevail" based on the billing records submitted for I.M. and E.J., and the Court agrees. *See* R & R at 143 n. 4, 144 n. 5. Plaintiffs have not met their burden to prove that a lesser fee reduction would be appropriate due to prior reductions made by the parties themselves. "[T]he district court has discretion in determining the amount of a fee award," and here the Court will decline to presume, absent support in the record, that Plaintiffs' reductions sufficiently reflect their partially prevailing status. *See Hensley*, 461 U.S. at 437, 103 S.Ct. 1933. The Court will thus adopt the Magistrate Judge's rate-reduction recommendations for I.M. and E.J. and will reduce A.D.'s award by 30%, not 50%.

### C. *Exclusion of Hours*

Plaintiffs also challenge the Magistrate Judge's exclusions of specific hours from their total hours billed. The Court examines the different categories separately.

#### 1. *Settlement Conferences*

█ Plaintiffs first object to the exclusion from all six cases of various hours that the Magistrate Judge identified as time spent in settlement conferences. *See* Obj. at 12–13; R & R at 144–48. IDEA, both sides agree, prohibits compensation for "resolution sessions." *See* 20 U.S.C. §§ 1415(f)(1)(B)(i), (i)(3)(D)(iii); *D.D. ex rel. Davis v. District of Columbia*, 470 F.Supp.2d 1, 2 (D.D.C.2007). In Plaintiffs' view, however, the meetings excluded by the Magistrate Judge were not such statutorily excludable "resolution sessions."

According to the statute, a resolution session must be convened by a local educational agency within fifteen days of receiving notice of a student's complaint and

before a due-process hearing, and it must be attended by the student's parents, members of their IEP Team who have "specific knowledge of the facts identified in the complaint," and an agency representative with "decision-making authority." *See* 20 U.S.C. §§ 1415(f)(1)(B)(i)(I)-(II). The local educational agency may not be represented by an attorney unless the parent is also represented by counsel, and the resolution session must discuss the complaint and provide the agency an opportunity to resolve the issues therein. *Id.* §§ 1415(f)(1)(B)(i)(III)-(IV).

For each of the six Plaintiffs, the Magistrate Judge excluded 2–3 hours that were identified in Plaintiffs' billing records as time spent traveling to or attending "settlement conferences." *See, e.g.,* Pl. MSJ, Exh. 2 (Billing Records) at 3 (attorney for S.R. reported spending 1.5 hours on "Travel to and from the scheduled settlement conference" and 0.5 hours "[p]articipat[ing] in the schedule settlement conference," where attorney "[d]iscussed DCPS' position on the issues alleged, and what they might be willing to offer by way of settlement," and "[d]iscussed the settlement offer with the client"); *see also id.* at 39 (3.0 hours billed for settlement activities for C.G.); *id.* at 59 (2.3 hours billed for settlement activities for L.J.); *id.* at 71 (2.5 hours billed for settlement activities for I.M.); *id.* at 112 (3.0 hours billed for settlement activities for E.J.); *id.* at 129 (2.5 hours billed for settlement activities for A.D.).

Because a "settlement conference" may qualify as a "resolution session" under IDEA, Plaintiffs' billing records must clearly establish that the meetings so identified are *not* statutorily excludable sessions. They do not. Rather, the records indicate that the so-called "settlement conferences" satisfied at least some of the statutory requirements for resolution ses-

sions, creating doubt as to whether compensation for those hours is permissible.

Plaintiffs assert that these conferences were sham resolution sessions, arranged by DCPS but not staffed with relevant members of the students' IEP teams or agency representatives with decisionmaking authority, but they point to nothing *specific* in the record to demonstrate that the meetings in question suffered from these deficiencies. *Cf.* Obj., Exh. 1 (Statement of Nicholas Ostrem) at 1 (stating generally that in his experience, DCPS often invites parties to meetings it calls resolution sessions "but fails to staff and conduct such meetings in accordance with the IDEA"). It is Plaintiffs' burden to prove their entitlement to compensation for the hours listed, and here the Court cannot determine, based on the evidence presented, that the hours related to "settlement" may be reimbursed under IDEA. *Accord Haywood v. District of Columbia,* No. 12–1722, 2013 WL 5211437, at *8 (D.D.C. Aug. 23, 2013) (refusing to "conclu[de] based solely on the invoice description" that time labeled as "settlement negotiations" was compensable where "Plaintiffs provide no authority, or explanation, for their contention that the meeting in question was not a resolution meeting for which fees are not compensable under the statute" and "have not met their burden of providing sufficient detail to allow the court to make an independent determination that this time was properly billed"). The Court will therefore adopt the Magistrate Judge's recommendation to exclude hours billed for "settlement conferences."

### 2. *Hours "Distant in Time" from the Complaint*

▉ A second category of exclusions to which Plaintiffs object consists of those identified by the Magistrate Judge as "too far removed in time" from the filing of the

complaint or the issuance of the HOD. *See* Obj. at 13. The Magistrate Judge excluded 30.9 hours that predated the filing of E.J.'s complaint, 15.3 hours that predated the filing of A.D.'s complaint, and 2.3 hours that postdated the issuance of the HOD in S.R.'s case and were "not related to ensuring compliance" with it. *See* R & R at 144–45, 146–47. Plaintiffs maintain that "the substance of that work" in all three cases was "related to the litigation" and renders those hours compensable. *See* Obj. at 13.

Courts have indeed declined to award compensation under IDEA for "[a]ctivities too remote in time or unrelated to the proceeding." *Rapu v. D.C. Public Schools,* 793 F.Supp.2d 419, 427 (D.D.C.2011). At the same time, there is no widely accepted rule mandating that work prior to the filing of a complaint is *necessarily* too remote to be compensable; on the contrary, "courts in this district have found that a year in advance of a hearing is an entirely reasonable window of time to be engaging in productive work ... based on a showing by the plaintiff that each charge was tied to a particular hearing." *Id.* (internal quotation marks and citation omitted); *see also Lax v. District of Columbia,* No. 04–1940, 2006 WL 1980264, at *4 (D.D.C. July 12, 2006) (noting that "it often takes up to a year for an administrative IDEA case to be resolved," so "the time spent over the course of a year for a particular client is not necessarily too remote" to be compensated).

The Court agrees that work performed in the year preceding an IDEA hearing is not "too remote in time" to be compensable under the statute, so long as Plaintiffs establish that such work is reasonably related to the proceeding. Using this framework, the Court does not believe the charges in these three cases were so temporally remote as to warrant their *per se* exclusion.

E.J.'s complaint was filed on June 18, 2013, and the hearing was held on August 20 and 23, 2013. *See* HOD at 87, 89. The Magistrate Judge recommended excluding most of the charges dated between January 9, 2013, and the filing of the complaint. *See* R & R at 146–47. Although these charges fall within a year of E.J.'s hearing, they were, as the Report notes, unnecessary for the filing of the due-process complaint. *See id.* at 17; *see also Role Models of America, Inc. v. Brownlee,* 353 F.3d 962, 972–74 (D.C.Cir.2004) (denying reimbursement of administrative-fee charges that were not explained). Much of counsel's work during this time appears related to a different matter—specifically, a separate court proceeding regarding E.J.'s post-arrest detention and his subsequent transfer to a psychiatric residential-treatment facility. Plaintiffs have not adequately explained how this work is related to the issues raised in E.J.'s due-process complaint, stating only that these charges were for "investigating possible claims, [and] determining the bounds of the disputes." *See* Statement of Nicholas Ostrem at 2. Plaintiffs have not adequately explained the relationship between these charges and the goals of E.J.'s due-process proceedings, so the Court will adopt the Magistrate Judge's recommendation to exclude these 30.9 hours. It further adopts the Magistrate Judge's recommendation that the 4 hours billed prior to the filing of E.J.'s complaint that were spent on work directly related to the IDEA claim here will be compensated. *See* R & R at 147.

A.D.'s complaint was filed on September 23, 2013, and the hearing was held on December 3, 2013. *See* HOD at 120–21. The Court declines to adopt the Magistrate Judge's recommendation to exclude all charges dated between December 3, 2012, and the filing of the complaint, as they also correspond to work performed within the year preceding A.D.'s hearing.

*See* R & R at 147. These charges, which are well explained in the Plaintiffs' invoice, are for work such as obtaining and reviewing the student's records, meeting with the student's school, corresponding with DCPS about the student's testing and special education, and consulting with the client. *See* Billing Hours at 124–28. The Court thus determines that they are related to the due-process hearing and are not too remote in time or substance to be compensable under IDEA.

S.R.'s hearing was held on July 24, 2013, and the HOD was issued on August 2, 2013. *See* HOD at 1. The Court will decline to adopt the Magistrate Judge's recommendation to exclude all charges after April 29, 2014, the date that corresponded to counsel's "[r]eceipt and review of the finalized IEP." *See* R & R at 144–45; Billing Hours at 31. Though these charges are dated more than eight months after the issuance of the HOD, they are neither unexplained nor unreasonable. The work documented involves reviewing placement letters from DCPS and further correspondence with DCPS regarding the student's placement, an issue central to the remedy prescribed by the HOD. *See* Billing Hours at 31–34; Statement of Nicholas Ostrem at 2 (explaining that these charges "were for work investigating proposed school locations" because "[t]he HOD in the S.R. Case ordered the development of an IEP, and by law every IEP must identify the location of services"). It is "reasonable to engage in work to ensure compliance with the … HOD," *Rapu,* 793 F.Supp.2d at 427, and these activities are reasonably targeted at ensuring such compliance here. *See* HOD at 19–20 (ordering DCPS to "discuss and determine an appropriate public or non-public school/program in which to place the Student"). For these reasons, the Court will not adopt the Magistrate Judge's recommendations regarding this latter category of exclusions as to S.R. and A.D., but it will adopt his recom-

mendations as to E.J.'s pre-complaint exclusions.

### D. *Costs*

■ Courts usually reimburse attorneys for copying, faxing, and postage fees incurred during IDEA litigation. *See Holbrook v. District of Columbia,* 305 F.Supp.2d 41, 46 (D.D.C.2004). Plaintiffs assert that they satisfied their burden of proof on the expense charges incurred for copying, faxes, and mileage traveled in connection with these proceedings because the District did not object to their proposed reimbursement rates. *See* Obj. at 14. But the Magistrate Judge correctly noted that Plaintiffs had failed to prove that they actually incurred $0.25 per page for copying and $1.00 for faxing, and the District's decision not to offer "rebuttal evidence" in no way alters Plaintiffs' burden of proof. *See* R & R at 154. Plaintiffs maintain that the D.C. Superior Court generally reimburses court-appointed special-education attorneys for printing and copying at a rate of $0.25 per page. *See* Statement of Nicholas Ostrem at 2. Courts in this district, however, have held that $0.25 per page is an excessive rate, *see McClam,* 808 F.Supp.2d at 190–91, and the Court agrees. The Court, accordingly, will adopt the Magistrate Judge's recommendation to reimburse copying and faxing at a rate of $0.15 per page. *See id.* at 191 (explaining that $0.15 is a reasonable rate for copying and faxing in D.C.). And, as did the Magistrate Judge, the Court will adopt Plaintiffs' proposed mileage reimbursement rate of $0.56 per mile. Hence the Court does not disturb any of the Magistrate Judge's recommendations as to Plaintiffs' costs.

### E. *Use of Current Rates*

■ Plaintiffs also seek compensation at "current hourly rates to account for delays

in payment." Obj. at 14. The Supreme Court has condoned the adjustment of rates where compensation is awarded "several years after the services were rendered." *Missouri v. Jenkins,* 491 U.S. 274, 283–4, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Here, however, the Magistrate Judge determined that the time elapsed between the services rendered by Plaintiffs' counsel and the Court's award of fees was not a "long period[ ] of delay" meriting such adjustment, *see* R & R at 147–48, and the Court concurs. All of the charges billed were incurred in the last three years, and during that time Plaintiffs were advancing their claims through the administrative process in a timely fashion—with no indication of undue delay caused by the District, the Hearing Officers, or this Court. Treating the normal duration of an IDEA proceeding as a compensable delay would contravene a seminal principle in IDEA-fee litigation—*viz.,* that awards ought not bestow windfalls upon attorneys. *See Save Our Cumberland Mountains, Inc. v. Hodel,* 857 F.2d 1516, 1519 (D.C.Cir.1988).

Plaintiffs point to a few cases in this district in which plaintiffs received current rates for fee awards in IDEA litigation. Of course, none of these cases is binding on this Court. Nor does the Court find them persuasive. For example, in *Petties v. District of Columbia,* No. 95–0148, 2009 WL 8663462 at *3–4 (D.D.C. Oct. 20, 2009), the court awarded current rates presumably to compensate for a delay caused by the defendants, who had initiated additional fee litigation in which they ultimately did not prevail. None of the other cases cited by Plaintiff suggests that current rates should be applied in calculating *all* fee awards under IDEA. The D.C. Circuit has been clear, moreover, that district

courts "exercise their discretion" in awarding attorney fees, so while a "delay in receipt of payment ... *may* be incorporated" in a fee award, the Court is under no obligation to do so. *See Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir.1980) (emphasis added).

Finally, Plaintiffs contend that the District habitually avoids paying attorney fees, *see* Obj. at 15, but they offer scant evidence demonstrating that the District either has previously been or is now likely to be recalcitrant in paying the fees ordered by the Court. Plaintiffs' unsubstantiated fears about delayed payment provide no basis for the substantial increase in rates they request. The Court, consequently, will adopt the Magistrate Judge's recommendation and use the rates applicable at the time the services here were rendered.

## F. *Calculation of Awards*

The analysis complete, the Court moves on to the arithmetic. The Court calculates Plaintiffs' awards based on the foregoing analysis, in addition to that contained in the Magistrate Judge's Report to which Plaintiffs have not objected.

For C.G., L.J., and I.M., the Court will adopt the Magistrate Judge's recommended award amounts: The Court awards $19,298.71 for fees and costs to C.G.; $12,035.30 to L.J.; and $11,806.01 to I.M.

For S.R., the Court will award the Magistrate Judge's recommended $19,418.26, plus an additional amount for the 2.3 hours of post-HOD work improperly excluded, billed at 75% of the 2013–2014 USAO *Laffey* rate,[1] or $221.25 per hour. This addi-

---

1. The USAO *Laffey* Matrix for the years 2003–2014 can be found at http://www.justice.gov/sites/default/files/usao-dc/legacy/2013/09/09/Laffey_Matrix2014.pdf. The Court here uses the rates for attorneys with 4–7 years' experience, as recommended by the Magistrate Judge.

tional award of $508.88 brings the total to $19,927.14.

For E.J., the Court will use 75% of *Laffey* rates, rather than the full *Laffey* rates as the Magistrate Judge did; in all other respects, the award remains the same. Using the 75%-of-*Laffey* rates, E.J.'s award now totals $16,426.47.

Lastly, for A.D., the Court adds an additional 15.3 hours for work predating the filing of the complaint that the Magistrate Judge improperly excluded, and it imposes a 30% reduction for A.D.'s partially prevailing status, rather than the recommended 50% reduction. The additional 15.3 hours—5.5 of which are for travel and 9.8 of which are for legal work—add $2,743.70 to the award. This additional amount is added to the Magistrate Judge's pre-reduction award of $10,883.83, and the combined $13,627.53 is then reduced by 30%. The Court subsequently adds the costs, as calculated by the Magistrate Judge, and A.D.'s resulting award is $9,664.97.

The grand total for all six Plaintiffs, therefore, is $89,158.60, as opposed to the $89,917.60 recommended by the Magistrate Judge.

## IV. Conclusion

For the reasons stated herein, the Court will substantially adopt Magistrate Kay's June 2, 2015, Report and Recommendation, granting in part and denying in part Plaintiffs' Motion for Summary Judgment and granting in part and denying in part Defendant's Cross–Motion for Summary Judgment. The Court will issue a contemporaneous Order to that effect.

## *REPORT AND RECOMMENDATION*

ALAN KAY, UNITED STATES
MAGISTRATE JUDGE

This case was referred to the undersigned for full case management on November 10, 2014, which includes a Report and Recommendation on any dispositive motion. (11/10/2014 Order of Referral [2].) Pending before the undersigned is Plaintiffs' Motion for Summary Judgment and Memorandum in Support thereof (collectively, the "Motion") [5]; Defendant's Opposition to Motion and Cross–Motion for Summary Judgment ("Cross–Motion") [8]; Plaintiffs' Reply and Opposition to the Cross–Motion (Pls.' Reply) [10]; and Defendant's Reply ("Def.'s Reply") [12]. Plaintiffs Ashima Reed ("Reed"), Crystal Green ("Green"), Martina Smith ("Smith"), Sandra Addison ("Addison"), Theresa James ("James") and Tracy Holman ("Holman") (collectively, the "Plaintiffs") are parents/guardians of students with disabilities who move this Court for an award of "reasonable attorneys' fees and costs incurred in the underlying [six] administrative proceedings, in the amount of $226,625.31[.]" (Motion at 1.) The administrative proceedings were brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.* (Motion at 2.)

Defendant District of Columbia ("Defendant" or "the District") disputes the prevailing party status of three of the Plaintiffs (Cross–Motion at 14–16) and the hourly rate applied to Plaintiffs' claims for attorney's fees. (Cross–Motion at 2–14.) Defendant asserts that the fees for counsel's travel and certain costs claimed by Plaintiffs are excessive. (Cross–Motion at 16–22.) Defendant also challenges Plaintiffs' claims of entitlement to fees at current rates and additional payment for "delay." (Cross–Motion at 22–23.)

## I. BACKGROUND

Plaintiffs Reed, Green, Smith, Addison, James and Holman are respectively the parents/guardians of S.R., C.G., L.J., I.M., E.J. and A.D., students with disabilities. (Motion, Appendix.) The IDEA guaran-

tees all children with disabilities a free appropriate public education ("FAPE"), 20 U.S.C. § 1400(d)(1)(A), and in general, FAPE "is available to all children with disabilities residing in the State between the ages of 3 and 21,...." 20 U.S.C. § 1412(a)(1)(A). Defendant District of Columbia is a municipal corporation that operates the District of Columbia Public Schools System ("DCPS"). (Complaint [1] ¶ 4.)[1] The District receives federal funds pursuant to the IDEA to ensure access to a Free and Appropriate Public Education ("FAPE") and it is obliged to comply with applicable federal regulations and statutes including the IDEA. *See* 20 U.S.C. § 1411. For ease of reference, each student's background information will be addressed separately within the undersigned's analysis of prevailing party status.

## II. *LEGAL STANDARD*

### A. Summary Judgment on an IDEA Claim

A party moving for summary judgment on legal fees must demonstrate prevailing party status and the reasonableness of the fees requested in terms of hours spent and hourly rate.[2] Pursuant to Fed. R. Civ. P. 56(a), summary judgment shall be granted if the movant shows that there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56). "A fact is material if it 'might affect the outcome of the suit under the governing law' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a

verdict for a nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C.Cir.2008) (quoting *Anderson*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

Summary judgment should be granted against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court is required to draw all justifiable inferences in the nonmoving party's favor and to accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. The non-moving party cannot rely on allegations or conclusory statements; instead, the non-moving party is obliged to present specific facts that would enable a reasonable jury to find it its favor. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.Cir.1999).

### 1. Prevailing Party Status

The IDEA gives courts authority to award reasonable attorney's fees to the parents of a child with a disability who is the prevailing party. 20 U.S.C. § 1415(i)(3)(B). The court must initially determine whether the party seeking attorney's fees is the prevailing party. *Jackson v. District of Columbia*, 696 F.Supp.2d 97, 101 (D.D.C.2010). *See District of Columbia v. West*, 699 F.Supp.2d 273, 278 (D.D.C.2010) (In considering a claim for IDEA attorney's fees, it is the court "not the hearing officer in the admin-

---

1. References to Defendant District of Columbia herein include DCPS, the Respondent during the administrative process.

2. The typical summary judgment standard is inapplicable here because "[t]he IDEA authorizes a court to award fees in its discretion

and to base the award on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Parks v. District of Columbia*, 895 F.Supp.2d 124, 129 (D.D.C.2012) (citation and internal quotations omitted).

istrative proceeding, which determines prevailing party status ....") (quoting *D.C. v. Straus,* 607 F.Supp.2d 180, 183 (D.D.C.2009)).

A party is generally considered to be the prevailing party if he succeeds "on any significant issue in litigation which achieves some of the benefit [ ] sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978)). The Supreme Court has indicated that the term "prevailing party" only includes plaintiffs who "secure a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't Health & Human Resources,* 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Supreme Court therefore rejected the "catalyst theory" whereby a plaintiff would be a prevailing party if the lawsuit brought about the desired result through a voluntary change in the defendant's conduct. *Id.* at 605, 121 S.Ct. 1835. The Supreme Court instead determined that a prevailing party must obtain a "material alteration of the legal relationship of the parties." *Id.* at 604, 121 S.Ct. 1835 (quoting *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). The standards in *Buckhannon* apply to administrative hearings under the IDEA even though the relief granted is administrative as opposed to judicial. *Abarca v. District of Columbia,* Civil Action No. 06–1254, 2007 WL 1794101 *2 n. 1 (D.D.C. June 19, 2007).

"[T]he term prevailing party [is] a legal term of art that requires more than achieving the desired outcome; the party seeking fees must also have been awarded some relief by the court." *District of Columbia v. Straus,* 590 F.3d 898, 901 (D.C.Cir.2010) (internal quotations and citations omitted). In *Straus,* the Court of

Appeals considered the following three factors to determine prevailing party status: 1) alteration of the legal relationship between the parties; 2) a favorable judgment for the party requesting fees; and 3) a judicial pronouncement accompanied by judicial relief. *Id.* at 901.

### 2. Establishing a Reasonable Fee

The plaintiff has the burden of establishing the reasonableness of any fee requests. *See In re North,* 59 F.3d 184, 189 (D.C.Cir. 1995). *See also Covington v. District of Columbia,* 57 F.3d 1101, 1107 (D.C.Cir. 1995) ("[A] fee applicant bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates.") "An award of attorneys' fees is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Smith v. Roher,* 954 F.Supp. 359, 364 (D.D.C.1997) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)); *see also Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

The IDEA states that "[f]ees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). To demonstrate a reasonable hourly rate, the fee applicant must show: (1) an attorney's usual billing practices; (2) counsel's skill, experience and reputation; (3) the prevailing market rates in the community. *Covington,* 57 F.3d at 1107 (citations omitted.) The determination of a " 'market rate' for the services of a lawyer is inherently difficult" and is decided by the court in its discretion. *Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence ... that

the requested [hourly] rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* Additionally, an attorney's usual billing rate may be considered the "reasonable rate" if it accords with the rates prevailing in the community for similar services by lawyers possessing similar skill, experience and reputation. *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 278 (D.C.Cir.1993).

## III. *ANALYSIS*

### A. Plaintiff's Prevailing Party Status

#### 1. S.R.

On May 24, 2013, Plaintiff Reed, parent of minor student S.R., filed a Due Process Complaint alleging that Defendant denied S.R. a free appropriate public education ("FAPE"). (S.R Hearing Officer Determination ("HOD") [5–1] at 1.)[3] The issues considered by the Hearing Officer were whether Defendant failed to identify, locate and evaluate the student for the periods May 24, 2011–June 2011, January 2012–June 2012 or during the 2012–2013 school year, and whether Defendant failed to timely evaluate the student upon the parent's written request on January 7, 2013? (S.R. HOD [5–1] at 4.) Plaintiff requested that the District fund independent comprehensive psychological, occupational therapy, and functional behavioral assessments and any other recommended evaluations for S.R. (S.R. HOD [5–1] at 1.) Plaintiff further requested that Defendant convene an individualized education program ("IEP") Team meeting within fifteen days of receiving the independent evaluations, to review such evaluations and determine the student's eligibility for special education services and develop an IEP

and behavior intervention plan ("BIP"). (*Id.*)

A due process hearing was held on July 24, 2013. (S.R. HOD [5–1] at 3.) On August 2, 2013, the Hearing Officer ordered Defendant to fund independent psychological and functional behavioral assessments and after such assessments were completed, to convene a multidisciplinary team ("MDT") meeting to review the results and determine if S.R. is eligible for special education and if so, to develop an IEP. (S.R. HOD [5–1] at 11.) Defendant does not contest Plaintiff Reed's prevailing party status.

#### 2. C.G.

C.G. is an adult student who has been determined to be eligible for special education and related services. (C.G. HOD [5–1] at 17.) Plaintiff Green, parent of C.G., filed a due process complaint in February 2013, and a due process hearing was held on May 13, 2013. (C.G. HOD [5–1] at 17–18.) The issues raised by Plaintiff were the District's alleged: 1. failure to reevaluate; 2. failure to develop an appropriate IEP (11/15/2012); 3. failure to implement IEPs (12/14/2011 & 11/15/2012); and 4. failure to provide an appropriate placement since December, 2011. (C.G. HOD [5–1] at 20.) The Hearing Officer noted that issue number one above was fully resolved prior to the hearing and withdrawn at the hearing and further, that Plaintiff met her burden of proof on issues nos. 2, 3 and 4. (C.G. HOD [5–1] at 29.) Defendant does not contest Plaintiff Green's status as a prevailing party.

#### 3. L.J.

Plaintiff Smith is the legal guardian of L.J., a minor student who is eligible for

---

**3.** For purposes of this Report and Recommendation, the terms "Plaintiff" and "Defendant" are used in place of "Petitioner" and "Respondent" when discussing the administrative proceedings.

services as a student with a specific learning disability. (L.J. HOD [5–1] at 39.) L.J.'s due process complaint was filed on or about June 25, 2013 and a hearing was held on September 3, 2013. (L.J. HOD [5–1] at 39, 41.) The complaint alleged that Defendant failed to evaluate L.J., at Plaintiff's request, while the student was attending School B during the 2011–2012 School Year ("SY"). (L.J. HOD [5–1] at 41.) The issues posed by the Hearing Officer were "[d]id the [Plaintiff] request that [Defendant] evaluate the Student numerous times between summer and winter, 2011–2012 [and] [i]f so, did [Defendant] fail to conduct an evaluation of the Student [and] if so, did [Defendant] deny the Student a FAPE?" (L.J. HOD [5–1] at 42.) The Hearing Officer found that L.J. was denied a FAPE through Defendant's failure to evaluate him from August 2011 through January 2012 despite the guardian's requests. (L.J. HOD [5–1] at 62.) The Hearing Officer awarded L.J. 4 hours of tutoring each week for a six month period during SY 2013–2014. (Id.) Defendant does not contest that Plaintiff Smith is a prevailing party.

### 4. I.M.

Plaintiff Addison is the legal guardian of I.M., a minor student who is eligible for services as a student with a specific learning disability. (I.M. HOD [5–1] at 67.) Plaintiff Addison filed a due process complaint on February 25, 2013 alleging that Defendant failed to include the Plaintiff in the November 14, 2012 IEP meeting and further that Defendant failed to conduct a formal assessment of I.M.'s social/emotional functioning and her occupational therapy needs when I.M. was first determined to be eligible. (I.M. HOD [5–1] at 67.) Plaintiff also alleged that I.M.'s IEP and placement (in a combination general and special education setting) were inappropriate insofar as I.M. should have been in a "full-time" special education placement.

(Id.) Plaintiff sought placement in a private special education school, compensatory education and funding for various evaluations. (Id.)

The due process hearing was held on April 29 and April 30, 2013 (I.M. HOD [5–1] at 66.) The Hearing Officer found that Plaintiff sustained her burden of proof on the issue of denial of FAPE based on Defendant's failure to include the Plaintiff in the November 14, 2012 IEP meeting and failure to provide an appropriate IEP with regard to the November 14, 2012 IEP. (I.M. HOD [5–1] at 75.) Plaintiff did not sustain her burden of proof regarding allegations that Defendant denied I.M. a FAPE by: 1) failing to re-evaluate the student following two verbal requests by Plaintiff; 2) failing to fully evaluate the student; 3) failing to provide an appropriate IEP on March 31, 2011, September 27, 2011, and December 15, 2011; or 4) failing to implement the IEP during the time the student attended School A. (I.M. HOD [5–1] at 75–76, 78–79.) The Hearing Officer did not award the Plaintiff's proposed compensatory education but did award some compensatory education resulting from the student's inappropriate IEP and educational placement from November 14, 2012. (I.M. HOD [5–1] at 81–82.) The Hearing Officer also amended the student's IEP to provide for 25 hours of specialized education per week to be provided outside general education and ordered Defendant to conduct certain evaluations of the student since Plaintiff made a request for re-evaluation within the context of the due process complaint. (I.M. HOD [5–1] at 76, 82.)

Upon review of the Hearing Officer's Decision, it is evident that because Plaintiff accomplished some of the relief she sought at the administrative level; i.e., funding of evaluations, amendment of the IEP and an award of compensatory edu-

cation, Plaintiff Addison should thus be considered a prevailing party entitled to reasonable attorney's fees. *See Wood v. District of Columbia,* 864 F.Supp.2d 82, 89 (D.D.C.2012) (finding that plaintiff was a prevailing party because she accomplished "her primary objective at the administrative hearing"). Plaintiff did not however prevail on all the claims that she pursued. *See generally* I.M.'s HOD. A court can "adjust" the fee award based on the "results obtained" and consideration of such results is "particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *see also Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley,* 461 U.S. at 439, 103 S.Ct. 1933. Because there were issues in this case on which Plaintiff Addison clearly did not prevail, the undersigned recommends that Plaintiff Addison's fees be reduced overall by fifty percent (50%) to reflect her status as a partially prevailing party.[4]

### 5. E.J.

On June 18, 2013, Plaintiff James, parent of minor student E.J., filed a due process complaint, which resulted in a due process hearing held on August 20 and 23, 2013. (E.J. HOD [5–1] at 87, 89.) The issues presented were whether Defendant denied E.J. a FAPE by: 1) failing to provide an appropriate placement from December 13, 2011 through May 10, 2012 and providing no placement from March 31, 2012 through May 10, 2012; 2) failing to

provide an appropriate placement from December 6, 2012 through February 22, 2013; 3) failing to identify an appropriate placement for the student at the June 13, 2013 MDT meeting; and 4) impeding the parent's participation in the decision-making process with the result that the student was placed at the Devereux Florida school. (E.J. HOD [5–1] at 89.) Plaintiff requested maintenance of the student's placement at New Hope Treatment Center; an IEP meeting to review and revise E.J.'s IEP, and compensatory education. (*Id.*) In this particular case, Plaintiff pursued claims against the Defendant and against the Office of the State Superintendent of Education ("OSSE"). *See generally* E.J. HOD.

With regard to issue no. 1 above, the Hearing Officer determined that Defendant denied E.J. a FAPE by failing to provide the student with an appropriate placement from February 27, 2012 through April 30, 2012, and E.J. had no placement from May 1, 2012 through May 9, 2012. (E.J. HOD [5–1] at 107.) With regard to issue no. 2, which was directed by Plaintiff to Defendant and OSSE, the Hearing Officer found that neither OSSE nor Defendant denied E.J. a FAPE. (E.J. HOD [5–1] at 109–112.) The Hearing Officer considered issues nos. 3 and 4 together and decided in favor of Plaintiff, concluding that Residential Placement 2 was not an appropriate placement for the student but the Attending School was an appropriate placement. (E.J. HOD [5–1] at 114.) The Hearing Officer declined to award any compensatory education. (E.J. HOD [5–1] at 116.) Because there were issues in this case on which Plaintiff James clearly did not prevail, the undersigned recommends that Plaintiff's fees be reduced overall by

---

**4.** The billing records submitted by Plaintiff's counsel make it impossible to separate out the charges for legal work related to issues on

which Plaintiff did not prevail. *See generally* I.M. Billing Records.

thirty percent (30%) to reflect her status as a partially prevailing party.[5]

### 6. A.D.

On September 23, 2013, Plaintiff Holman, legal guardian of minor student A.D., filed a due process complaint, alleging that Defendant denied the student a FAPE by failing to implement his IEP in the 2011–2012 SY and failing to provide an appropriate placement during that time. (A.D. HOD [5–1] at 120, 122.) Plaintiff requested the funding of an independent evaluation with subsequent placement in the program recommended for the student and further, that an IEP meeting be convened. (A.D. HOD [5–1] at 122.) A due process hearing was held on December 3, 2013. (A.D. HOD [5–1] at 121.) The Hearing Officer noted that while "[Plaintiff] has asserted [s]tudent was denied a FAPE because [of] [Defendant] failing to implement the IEPs in effect during the 2011–2012 school year[,] [t]he evidence as to the issue of failure to implement is scanty." ( [5–1] at 131.)[6] The Hearing Officer stated however that "[i]n contrast, [Plaintiff] has provided evidence showing that DCPS did not implement the speech-language therapy required by [s]tudent's IEP in the 2011–2012 school year." (A.D. HOD [5–1] at 133.)

The Hearing Officer concluded that there was a denial of FAPE regarding the failure to implement the student's IEP; however, because that finding was "based solely on the failure to provide [the] [s]tudent with speech-language services," the Hearing Officer also addressed whether the Defendant denied FAPE by failing to provide an appropriate placement. (A.D.

HOD [5–1] at 135–136.) The Hearing Officer found that the Plaintiff failed to meet her burden of proof on denial of FAPE based on failure to provide an appropriate placement. (A.D. HOD [5–1] at 136–7.) The Hearing Officer ordered that the Defendant fund the student's assessment and awarded the Plaintiff "sufficient services to make up for an entire year of speech-language services...." (A.D. HOD [5–1] at 137–8.) Because there were issues in this case on which Plaintiff Holman clearly did not prevail, the undersigned recommends that Plaintiff Holman's fees be reduced overall by fifty. percent (50%) to reflect her status as a partially prevailing party.[7]

### B. Number of Hours Billed by Counsel

While the Court is empowered to exercise its discretion in determining the fee amount, the plaintiff bears the burden of establishing all elements of the requested fee award, including entitlement to an award, documentation of appropriate hours, and justifications of the reasonableness of billing. *Blum*, 465 U.S. at 896 & n. 11, 104 S.Ct. 1541. The undersigned has reviewed the billing records submitted by Plaintiff's counsel and with respect to the number of hours billed, the undersigned recommends exclusion of certain hours, for the reasons explained below.

### 1. S.R

On August 2, 2013, the Hearing Officer ordered Defendant to fund independent psychological and functional behavioral assessments and thereafter convene a MDT meeting to determine if S.R. was eligible for special education and if so, to develop

---

5. The billing records make it impossible to separate out the charges for legal work related to issues on which Plaintiff did not prevail. *See generally* E.J. Billing Records.

6. These arguments were proffered in the alternative. ( [5–1] at 135.)

7. The billing records make it impossible to separate out the charges for legal work related to issues on which Plaintiff did not prevail. *See generally* A.D. Billing Records.

an IEP. (S.R. HOD [51] at 11.) The timesheets submitted by counsel for Plaintiff Reed indicate that, after the HOD was issued, S.R.'s assessments were completed and multiple meetings were convened, albeit with many postponements, culminating in counsel's "[r]eceipt and review of the finalized IEP" on April 29, 2014, eight months after the HOD was issued. (S.R. Billing Records [5–2] at 31.)

The undersigned finds that some of counsel's time entries post-dating April 29, 2014, totaling 2.3 hours, relate to Plaintiff Reed's request to view/observe the student's "placement." (S.R. Billing Records [5–2] at 31–34.) The undersigned recommends that these charges be excluded because this work performed by counsel was not related to ensuring compliance with the HOD and the charges are far removed in time from the due process hearing and the HOD. The undersigned further recommends that the June 14, 2013 charges for counsel's travel to and participation in a "settlement conference," totaling 2.0 hours, (S.R. Billing Records [5–2] at 3), be denied because such charges are prohibited under the IDEA. *See* 20 U.S.C. § 1415(f)(1)(B)(i) & (i)(3)(D)(iii) (barring fees for attendance at a resolution session); *D.D. ex.rel. Davis v. District of Columbia,* 470 F.Supp.2d 1, 2 (D.D.C.2007) (same).[8]

## 2. C.G.

The Hearing Officer ordered that Defendant convene a meeting of the student's MDT/IEP team to review the independent educational evaluations and any other updated information regarding the student, and to revise the goals and services in the student's IEP. (C.G. HOD [5–1] at 35–36.)

The Hearing Officer further ordered that the team discuss whether the student needs a "dedicated aide" and/or "[e]xtended [s]chool [y]ear" and determine the student's "exit category" under the IEP and an appropriate school/program in which to place the student. *Id.* at 36. The student was awarded compensatory education in the form of one-to-one tutoring and a laptop computer. *Id.*

Although counsel did not draft C.G.'s due process complaint until February of 2013, counsel billed time on this matter as early as November 3, 2012. (C.G. HOD [5–1] at 36–37.) The undersigned finds that it is reasonable to assume that counsel would meet with the parent/guardian and obtain information about the student prior to filing the due process complaint.[9] The undersigned notes that counsel has excluded charges for 2.5 hours for attending a November 12, 2013 meeting at the student's school and recommends that counsel's related charge for 1.5 hours of travel time should also be excluded. (C.G. Billing Records [5–2] at 36.) The undersigned also recommends excluding the March 14, 2013 charges of 1.5 hours for travel and 1.5 hours for attending a "settlement conference." (C.G. Billing Records [5–2] at 39.)

The undersigned further recommends that all time billed by I.J. Holman be excluded: .5 hours on 5/7/2013; 2.5 hours on 5/11/2013; and 2 hours on 5/13/2013. (C.G. Billing Records [52] at 43–45.) Although counsel's Verified Statement ( [5–3] at ¶ 13) states that Dr. Ida Jean Holman was billed as a paralegal, the HOD lists Dr. Ida Jean Holman as an educational advocate who testified as a witness. (C.G. HOD [5–1] at 19.)[10] Prevailing par-

8. Counsel should be well-aware that these charges are statutorily prohibited.

9. In this case there were some time charges in November, 2012, no charges in December, 2012, and one nominal time charge in January, 2013 before the due process complaint

was filed. (C.G. Billing Records [5–2] at 36–37.)

10. The work performed by I.J. Holman included evaluating the student's compensatory education plan and preparing to testify at the

ents/guardians may not be reimbursed for a non-attorney conducting non-legal work. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 300, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006) ("[T]he terms of the IDEA overwhelmingly support the conclusion that prevailing parties may not recover the costs of experts or consultants.")

3. **L.J.**

The Hearing Officer ordered that the Defendant provide the student with 4 hours individualized tutoring every week for a six month period. (L.J. HOD [5–1] at 62.) The undersigned recommends excluding the July 15, 2013 charges, totaling 2.3 hours, for traveling to and attending a "settlement conference." (L.J. Billing Records [5–2] at 59.)

4. **I.M.**

The Hearing Officer ordered that the Defendant shall conduct certain evaluations of the student, convene a meeting to review the results and revise the student's IEP. (I.M. HOD [5–1 at 82].) The Hearing Officer further ordered that Defendant shall provide the student with three hours of tutoring per week and amend the student's IEP to provide for 25 hours of specialized instruction per week outside of general education and an ESY for SY 2012–2013. (*Id.*)

The undersigned recommends that the charges by S. Millis dated March 5, March 22, April 9, April 27 and April 29, 2013, totaling 7.8 hours, with regard to analyzing the student's IEP and file, conducting a home visit, and preparing for and providing testimony at the hearing, be excluded on grounds that the work performed by S.

Millis was in the nature of work performed by a lay advocate/educational consultant rather than a paralegal. (I.M. Billing Records [5–2] at 70, 71, 73, 77–78.) [11] The undersigned further recommends excluding the March 11, 2013 charges for traveling to and attending a "settlement conference," which total 2.5 hours. (I.M. Billing Records [5–2] at 71.)

5. **E.J.**

The Hearing Officer concluded that the student was not in an appropriate placement and ordered that Defendant fund the student's placement at the "Attending School" for the remainder of the 2013–2014 SY. (E.J. HOD [5–1] at 117.) The undersigned recommends excluding the majority of charges that pre-date the preparation of the due process complaint on grounds that this work performed by Plaintiff's counsel was too remote in time and unnecessary for the filing of the due process complaint. *See Role Models of America, Inc. v. Brownlee*, 353 F.3d 962, 972–74 (D.C.Cir. 2004) (denying reimbursement of administrative fee charges that were not explained and had nothing to do with the appeal); *Czarniewy v. District of Columbia*, No. Civ. A. 02–1496(HHK), 2005 WL 692081, *4 (D.D.C. March 25, 2005) (disallowing unexplained charges that predated the administrative hearing by an extended period of time so as to "preclude a meaningful relationship with the hearing.") *Compare Lax v. District of Columbia*, Civil Action No. 04–1940, 2006 WL 1980264, at *4 (D.D.C. July 12, 2006) (fees predating the hearing by an extended period of time allowed because Plaintiffs tied each charge to the subsequent hearing.)

Due Process Hearing. (C.G. Billing Records [5–2] at 43–44.)

11. Counsel's Verified Statement ([5–3] at ¶ 12) indicates that Sharon Millis ("Millis")

was billed as a paralegal. She was labeled as an educational advocate on the witness list. (I.M. HOD [5–1] at 21.)

In this case, the due process complaint was not filed until June 18, 2013, but counsel started billing for work on January 9, 2013 and billed 34.9 hours prior to drafting the complaint, broken down into 3.2 hours for travel, billed at $201.00/hour and 31.7 hours for work billed at $402.00/hour.[12] (E.J. Billing Records [5–2] at 92–105.) The undersigned recommends allowing the following charges that pre-date the drafting of the due process complaint on 6/17/2013: 1/9/2013–1.0 hour; 1/20/2013–.3 hours; 2/21/2013–.3 hours; 2/26/2014–.2 hours; 4/9/2013–.3 hours; 5/21/2013–.2 hours; 6/6/2013–1.0 hour; 6/6/2013–.3 hours; 6/13/2013–.3 hours; and 6/14/2013–.1 hours, totaling 4.0 hours, all billed at $402.00/hour, and excluding the remaining 30.9 hours, which includes 3.2 hours travel time billed at $201.00/hour, and 27.7 hours for work billed at $402.00/hour.[13] (*Id.*) The undersigned further recommends excluding the July 10, 2013 charges for traveling to and attending the "settlement conference," which total 3.0 hours. (E.J. Billing Records [5–2] at 112.)

### 6. A.D.

The Hearing Officer concluded that Defendant denied the student a FAPE by failing to implement his IEP in SY 2011–2012 SY and did not provide the speech-language services required pursuant to the IEP. (A.D. HOD [5–1] at 138.) The Hearing Officer further found that Plaintiff did not meet her burden of proof as to the alleged failure to provide special education instructional hours under the IEP or an appropriate placement in SY 2011–

2012. (*Id.*) The undersigned recommends excluding 15.3 hours, which includes 5.5 hours of travel time to various meetings at the student's school, billed at $201.00/hour, and 9.8 hours billed at $402.00/hour. (A.D. Billing Records [5–2] at 124–128.) These hours were billed between December 3, 2012 and filing of the due process complaint on September 23, 2013, and should be excluded on grounds that this work was too far removed in time from and unnecessary for the filing of the due process complaint. (*Id.*)[14] The undersigned further recommends excluding the charges for 2.5 hours, billed on October 4, 2013, for travel to and attendance at a "settlement conference." (A.D. Billing Records [5–2] at 129.)

### C. Hourly Rate

### 1. Use of Current Market Rates

Plaintiffs assert that they are entitled to payment of legal fees at the law firm's "current rates" to account for a delay in payment. (Motion at 7.) Plaintiffs rely on *Missouri v. Jenkins*, 491 U.S. 274, 283–84, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989) (anticipating a possible adjustment for delay in payment in situations where "compensation [is] received several years after the services were rendered); *Murray v. Weinberger*, 741 F.2d 1423, 1433 (D.C.Cir. 1984) (CITE); *Copeland v. Marshall*, 641 F.2d 880, 893 (D.C.Cir.1980) (en banc) (concluding that a "percentage adjustment to reflect the delay in receipt of payment" may be appropriate where "payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime").

---

12. For example, counsel billed for several court appearances on behalf of the student. (E.J. Billing Records [5–2] at 93–96.)

13. These charges are relevant to the filing of the due process complaint and include a consultation with the parent and evaluation of legal options.

14. The undersigned recommends permitting the following charges during that same period of time: 1 hour–12/3/2012; .3 hours–12/4/2012; .2 hours–12/7/2012; 1 hour–12/20/2012; 1.5 hours–4/25/2013; .5 hours–4/26/2013; .1 hour–4/30/2013; .3 hours–9/10/2013; 1.5 hours–9/17/2013, 1 hour–9/20/2013. (A.D. Billing Records [5–2] at 124–128.)

Those cases cited by Plaintiffs, which referenced long periods of delay and did not involve IDEA claims, can be distinguished from the instant case where Plaintiffs elected to consolidate six separate claims by six Plaintiffs into one civil action for IDEA attorney's fees; counsel's work relating to the administrative proceedings was performed during 2013 through mid–2014; this civil action was filed in late 2014, and the completion of briefing was in February of 2015.

Defendant relies upon *McAllister v. D.C.*, 53 F.Supp.3d 55, 58 (June 27, 2014) (an IDEA fees case where the court noted that an award of fees at current rates is not appropriate where a plaintiff does not provide an explanation as to the appropriateness of current rates or give examples of courts awarding current rates in other IDEA actions). The undersigned does not recommend adjusting the attorney's fees by applying current hourly rates because Plaintiffs have not sufficiently explained why current rates are warranted nor have they cited case law supporting an award of fees at current rates in the context of an IDEA fees' claim.

## 2. Calculating Counsel's Hourly Rate

### a. Legal Standard and Burden of · Proof

In order to establish a reasonable hourly rate, a fee applicant must show the attorneys' billing practices, the attorneys' skill, experience, and reputation, the prevailing market rates in the relevant community." *Covington,* 57 F.3d at 1107; *see also Blum,* 465 U.S. at 896 n. 11, 104 S.Ct. 1541 ("[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") The plaintiffs may point to evidence such as an updated version of the Matrix or their own

survey of rates in the community. *Covington,* 57 F.3d at 1109. The burden then shifts to the government to produce "equally specific countervailing evidence" showing that the plaintiffs' proposed hourly rate is flawed. *Id.*

Pursuant to the IDEA, federal courts may award "reasonable" attorney's fees, 20 U.S.C. § 1415(i)(3)(B)(i), which are based on the rates "prevailing in the community . . . for the kind and quality of services furnished." 20 U.S.C. § 1415(i)(3)(C). With regard to the prevailing market rates in the District of Columbia, a reasonable hourly rate for complex federal litigation has routinely been determined through the *Laffey* Matrix. *Heller v. D.C.,* 832 F.Supp.2d 32, 40 (D.D.C.2011). *See Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. 354, 371 (D.D.C.1983), *aff'd in part, rev'd in part on other grounds,* 746 F.2d 4 (D.C.Cir.1984), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3488, 87 L.Ed.2d 622 (1985). One version of the Matrix, maintained by the United States Attorney's Office for the District of Columbia, Civil Division, revises the Matrix annually to reflect increases in the local Consumer Price Index ("CPI"). *Rooths · v. District of Columbia,* 802 F.Supp.2d 56, 61 (D.D.C.2011). The second version of the *Laffey* Matrix, sometimes referred to as an "enhanced *Laffey* rate," [but referred to by Plaintiffs as the "updated version"] is calculated using the "legal services component of CPI rather than the general CPI. . . ." *Smith v. District of Columbia,* 466 F.Supp.2d 151, 156 (D.D.C.2006).

In the instant case, Plaintiffs proffered evidence to establish their attorney's experience, skill, and reputation in IDEA matters. *See* Verified Statement of Nicholas Ostrem [5–3] at 2, ¶ 11. (indicating that Plaintiffs' counsel has five to six years of experience in IDEA law and has "litigated or assisted in litigating over 100 special

education cases in the District of Columbia" and "represented more than 200 clients ..., regarding more than 300 students.") Counsel's hourly billing rate is $402.00. *See generally* Billing Records [5–2]. In his Verified Statement, Plaintiffs' counsel Nicholas Ostrem states that "[t]he Ostrem Firm has always matched its hourly rates to those in what is commonly known as the "*Laffey* matrix," updated for changes in the legal services component of the Consumer Price Index ...." ( [5–3] at 2, ¶ 8.) [15]

### b. Applicability of enhanced *Laffey* rates

Plaintiffs argue that the "prevailing community rates" for attorneys who represent IDEA claimants during administrative proceedings should be based on the "updated version" of the *Laffey* Matrix. (Motion at 6.) *See Eley v. D.C.*, 999 F.Supp.2d 137 (D.D.C.2013) (awarding attorneys' fees in accord with the updated version of the *Laffey* Matrix.). *See also Salazar v. D.C.*, 123 F.Supp.2d 8, 14–15 (a non-IDEA case in which the court adopted enhanced *Laffey* rates.) Plaintiffs submit as exhibits the updated version of the *Laffey* Matrix ( [5–3] at 4) and a Declaration of Dr. Michael Kavanaugh, an economist who adjusted the *Laffey* Matrix by applying the legal services price index ( [5–3 at 6–9)).[16]

Plaintiffs also provide a National Law Journal billing survey ( [5–3] at 18–20), to demonstrate that the "average partner rates in the Washington D.C. area greatly exceed Plaintiffs' counsel's customary rates." (Motion at 7.)[17] This survey explores the rates that are typically charged by practitioners at the largest law firms in the District of Columbia and is therefore of limited value. *See Heller v. District of Columbia*, 832 F.Supp.2d 32 at 45–46 (D.D.C.2011) (discussing the problems with using the survey to determine prevailing market rates for attorneys from "outside of the "big firm' context" and noting that plaintiff submitted no evidence of the "rates typically charged by attorneys at small or boutique law firms in the District of Columbia").

Plaintiffs further rely upon a Declaration of Stevie Nabors, Esq. [10–3] at 1–2, ¶¶ 3–5 (indicating that prior to January 1, 2014, the law firm Moran & Associates billed at hourly rates consistent with the *Laffey* Matrix, but on January 1, 2014, the firm adjusted its rates consistent with the updated *Laffey* Matrix and such rates are "regularly paid by clients who retain the firm to litigate cases on a non-contingency basis").[18] Mr. Nabors does not, however, specify what percentage of his firm's clients litigate IDEA cases on a non-contingency basis. Furthermore, while Mr. Ostrem's aforementioned Declaration indi-

**15.** Counsel does not however indicate the length of time that the Ostrem Firm has been operating. Counsel was previously with Tyrka & Associates and then with the Law Offices of Charles Moran and then with James E. Brown & Associates, PLLC, at least through September 14, 2012. *See* Verified Statement of Nicholas Ostrem [10–5] at 1, ¶¶ 3–5.

**16.** Defendant notes that the Kavanaugh Declaration was prepared for use in a case filed in the D.C. Superior Court and it has no particular relevance to this case. (Cross–Motion at 11.)

**17.** Most of the firms listed on the billing survey are not located in Washington D.C. and thus have no bearing whatsoever on determining "prevailing community rates." Furthermore, there is no indication that the Washington D.C. law firms listed on the billing survey handle IDEA cases.

**18.** Mr. Nabors, who obtained his law degree in 2011 and was licensed to practice in the District of Columbia is 2013, is a "Managing Partner of Moran and Associates, a law firm specializing in litigation under the [IDEA]...." (Nabors Declaration [10–3] at 1, ¶¶ 1–2.)

cates that his firm bills at enhanced *Laffey* rates, it does not indicate whether these enhanced rates are actually paid by any of the firm's clients.[19] *See McAllister v. District of Columbia,* 21 F.Supp.3d 94, 108 (D.D.C.2014) (discussing the defects in an affidavit submitted by counsel in support of enhanced *Laffey* rates; namely, that the affidavit did "not provide sufficient information for the Court to determine whether these rates represent the market rate for routine IDEA litigation" because, *inter alia,* it did "not specify, out of the hundreds of IDEA cases the firm handles, how many of the firm's clients pay the enhanced rate.")

Defendant asserts that Plaintiffs' request for enhanced *Laffey* rates is "unreasonable because that rate exceeds a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious case." (Cross–Motion at 8 (citation omitted)). The *Rooths* court declined to award enhanced *Laffey* rates because that Matrix was generated using national statistics rather than local statistics and also because the court found that the Matrix did not reasonably approximate the rates associated with IDEA litigation in the District of Columbia. *Rooths,* 802 F.Supp.2d at 62; *see Miller v. Holzmann,* 563 F.Supp.2d 54 (D.D.C.2008), *aff'd in part, vacated in part on other grounds sub nom. United States ex rel. Miller v. Bill Harbert Internat'l Construction,* 786 F.Supp.2d 110 (D.D.C.2011) (awarding fees at USAO *Laffey* Matrix rates after determining that Dr. Kavanaugh's updated Matrix lacked "geographic specificity" and further noting that this "alternative meth-

odology has achieved only limited acceptance in this District"). *See also Heller,* 832 F.Supp.2d at 45 (finding that "[n]either index is perfect" but deciding to use the "widely accepted USAO Laffey Matrix as the "starting point" for its analysis"); *McAllister v. D.C.,* 21 F.Supp.3d 94, 107 (D.D.C.2014) (relying on the *Rooths* rationale in rejecting the use of the enhanced *Laffey* rates).

The undersigned concludes that Plaintiffs have failed to carry their burden to establish the reasonableness of the requested enhanced *Laffey* Matrix rates and thus recommends denying fees based on enhanced *Laffey* rates.

### c. Using *Laffey* as a starting point

The undersigned does not recommend awarding fees at either enhanced *Laffey* Matrix or *Laffey* Matrix rates. The IDEA statute provides for fees at rates prevailing in the community for the **"kind and quality of services furnished."** 20 U.S.C. § 1415(i)(3)(C) (emphasis added). The majority of lawyers who specialize in handling IDEA cases uniformly state that their usual practice fees for IDEA cases are based on *Laffey* rates or enhanced *Laffey* rates, which are ergo, reasonable fees. A reasonable fee is one that is "sufficient to induce a capable attorney to undertake the representation[.]" *Perdue v. Kenny A.,* 559 U.S. 542, 552, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010).[20]

In this district, judges "routinely refer to the [USAO] *Laffey* Matrix to determine the reasonableness of requested attorney's fees in IDEA actions." *B.R. ex rel. Remp-*

---

**19.** With regard to IDEA fee litigation, it is generally recognized that most judges from this Court award legal fees consistent with rates set forth in the USAO *Laffey* Matrix (or reduced to 75% of those rates). In the event that Mr. Ostrem's clients are awarded fees at *Laffey* Matrix rates, do his clients supplement

the fees paid to the firm so that Mr. Ostrem receives enhanced *Laffey* Matrix rates?

**20.** The undersigned does not dispute that counsel's knowledge of IDEA law, experience, and understanding of the procedural aspects of administrative hearings helped counsel to obtain the relief sought by Plaintiffs.

*son v. D.C.*, 802 F.Supp.2d 153, 164 (D.D.C.2011). *See generally Brighthaupt v. D.C.*, 36 F.Supp.3d 1, 4 (D.D.C.2014) (recognizing that *Laffey* rates may be used as "an appropriate starting point for determining rates of reimbursement for attorneys who challenge the decisions of the DCPS.") However, there is a split in this district as to whether *Laffey* rates represent the market rates for attorneys who litigate IDEA cases. The *Laffey* case gave birth to the *Laffey* Matrix which provides an hourly rate with a cost of living yearly addition. Defendant argues that "there is a substantial volume of cases that suggest that 3/4 of [USAO] *Laffey* or even less is proper in these cases." (Cross–Motion at 6 & n.1.) Defendant explains that the *Laffey* rate resulted from complex federal litigation involving a class action lawsuit lasting thirteen years and involving "an extended period of pretrial discovery, full trial on the merits, two rounds of appeals, and one *certiorari* petition" in contrast to the non-complex administrative proceedings in the instant case. (Cross–Motion at 8); *see Laffey*, 572 F.Supp. 354, 359 (D.D.C.1983). Cases following *Laffey* have applied the Matrix for complex federal litigation. IDEA cases can rarely be classified as complex federal litigation. As noted in *Rooths*, 802 F.Supp.2d at 63, the majority of the legal services for the IDEA issues of special needs students are routine.

Plaintiff argues that the trial court should not reduce the hourly rate based on a lack of complexity because "[t]he Supreme Court has held that complexity should not be factored into fee awards." (Pls.' Reply at 4–5.) Plaintiffs cite *Perdue*, 559 U.S. at 548, 130 S.Ct. 1662 (stating that "the novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors are fully reflected in the number of billable hours recorded by counsel") and *Eley*, 999 F.Supp.2d at 160 (finding that "the reason-

ing in *Perdue* is equally applicable to enhancements or reductions").

In an analysis of what constitutes a "reasonable" attorney's fee, courts may consider factors such as the complexity of the issues addressed during the IDEA administrative process, the type of work that was performed by counsel, and the manner in which the disputed issues were resolved. *See, e.g., McAllister v. D.C.*, 53 F.Supp.3d 55, 60–61 (D.D.C.2014) (discussing reasons for awarding less than full *Laffey* rates and distinguishing circumstances where rates equaling or exceeding *Laffey* have been applied); *Gardill v. D.C.*, 930 F.Supp.2d 35, 43 (D.D.C.2013) (citations omitted) (noting that "[c]omplexity can require both a quantitative and qualitative assessment" and examining indicia of complexity such as the length of the hearing, number of documents and witnesses, presence of novel legal issues and use of expert testimony); *Parks v. D.C.*, 895 F.Supp.2d 124, 130–132 (D.D.C.2012) (examining the record in the case with regard to the complexity of the proceedings, to determine whether fees equal to or near the *Laffey* rate apply).

The *Laffey* Court noted that the Supreme Court has interpreted "a reasonable attorney's fee" to be one that is "adequate" to attract competent legal advice, but does not produce "windfalls" to attorneys. *Laffey*, 746 F.2d at 16 (quoting *Blum*, 465 U.S. at 897, 104 S.Ct. 1541.) "As both *Blum* and *Laffey* teach, the determination of an award of reasonable attorney fees is at bottom a question of statutory interpretation." *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1518 (D.C.Cir.1988). The undersigned examines the circumstances of the underlying administrative proceedings to determine whether full *Laffey* rates are recommended.

In S.R.'s case, the July 24, 2013 due process hearing lasted approximately three and one-half hours and involved only one witness, the student's parent. (S.R. HOD [5–1] at 3, 13.) Over 50% of counsel's time was spent monitoring the Defendant's compliance with the HOD as opposed to obtaining relief for Plaintiff. (S.R. Billing Records [5–2] at 8–35.)

In C.G.'s case, the Hearing Officer did not mention any substantive pre-hearing motions. (C.G.'s HOD.) Plaintiff's 20 exhibits and Defendant's 4 exhibits were admitted into evidence without objection and during the one day hearing, Plaintiff presented 7 witnesses, including an expert psychologist, and Defendant presented 2 witnesses. (C.G. HOD [5–1] at 18–19.) Counsel spent approximately five hours (billed at $402 per hour) scheduling and rescheduling conferences and some of his other time billed was for quasi-administrative type work. (C.G. Billing Records [5–2] at 37–40, 42.) About one-third of counsel's time was spent ensuring compliance with the HOD. (C.G. Billing Records [5–2] at 45–46.)

In L.J.'s case, Defendant made a motion to dismiss the due process complaint, which was denied by the Hearing Officer and Plaintiff made a motion to strike and/or limit Defendant's defenses, which appears to have been denied. (L.J. HOD [5–1] at 40; L.J. Billing Records [5–2] at 61.) The due process hearing was completed within one day, with Plaintiff entering 8 exhibits into evidence and Defendant entering 10 exhibits into evidence. (L.J. HOD [5–1] at 41.) Plaintiff proffered three witnesses (which included one ex-

pert) and Defendant proffered two witnesses. (*Id.*) The sole issue presented was whether Defendant failed to evaluate the student during the 2011–2012 school year while student attended School B. (*Id.*) The amount of time spent by counsel for ensuring compliance with the HOD was approximately eight hours (out of a total of approximately fifty-eight hours).[21] (L.J. Billing Records [5–2] at 65–68.)

In I.M.'s case, the Hearing Officer convened the seven hour due process hearing over the course of two [half] days. (I.M. HOD [5–1] at 66; I.M. Billing Records [5–2] at 78.) The Hearing Officer admitted twenty-four exhibits on behalf of each of the parties and there were a total of five witnesses, two of whom testified by telephone and one or two who were designated as experts. (I.M. HOD [5–1] at 73 n.10, n.11; 83–86.)[22] The undersigned notes that Plaintiff's counsel billed thirteen hours for preparing his closing argument, which seems excessive, especially in light of the fact that he billed .3 hours for reviewing the Defendant's closing argument. (I.M. Billing Records [5–1] at 78.) Furthermore, over twenty-five percent of counsel's time was spent ensuring compliance with the HOD. (I.M. Billing Records [5–1] at 78–90.)

E.J.'s case included claims against both DCPS and OSSE and it also involved numerous motions. DCPS filed a Response and Supplemental Response to Plaintiff's Due Process Complaint. (E.J. HOD [5–1] at 87.) Plaintiff filed a Motion to Enforce Stay–Put Protection, which was opposed by both DCPS and OSSE; Plaintiff subse-

---

**21.** The undersigned notes that counsel billed for four nominal but duplicative charges on 10/28, 11/5, 11/15, and 11/26 of 2013. (L.J. Billing Records [5–2] at 67.) *See Davis Cty. Solid Waste Mgmt. and Energy Special Service Dist. v. United States EPA,* 169 F.3d 755, 761 (D.C.Cir.1999) (per curiam) (duplication of effort is a basis for finding the number of hours excessive).

**22.** The Hearing Officer noted that Defendant did not object to any of Plaintiff's exhibits but Plaintiff objected to seven of Defendant's exhibits, all of which were admitted into evidence. (I.M. HOD [5–1] at 4 n.6.)

quently filed a reply and the Hearing Officer granted the Motion. (E.J. HOD [5–1] at 88.) DCPS moved to dismiss the Due Process Complaint, which Plaintiff opposed, and OSSE made a partial motion for dismissal, which was also opposed by Plaintiff. (*Id.*) The Hearing Officer denied DCPS's motion but granted OSSE's motion. (*Id.*) The Due Process Hearing took two days—August 20 and 23, 2013—and thirty-five exhibits were admitted on behalf of the Plaintiff; thirty-five exhibits were admitted on behalf of DCPS; twenty-two exhibits were admitted on behalf of OSSE; and nineteen exhibits were admitted by the Hearing Officer. (E.J. HOD [5–1] at 90–93.) The Plaintiff presented eight witnesses; DCPS presented four witnesses and OSSE presented one witness. (E.J. HOD [5–1] at 93.)

In A.D.'s case, the due process hearing was completed within one half day. (A.D. Billing Records [5–2] at 134.) The Hearing Officer noted that the hearing was originally scheduled for two days but on the day before the hearing, counsel for the Plaintiff informed the Hearing Officer that he had not arranged for the appearance of DCPS witnesses. (A.D. HOD [5–1] at 121 n.4. The Plaintiff testified and presented only one additional witness. (*Id.*) "No witnesses with educational experience and knowledge regarding [the] Student's program and/or services testified [and] [Defendant] presented no witnesses and moved for a directed verdict." (*Id.*) The hearing officer based his opinion on the Plaintiff's testimony and the documents that were admitted into evidence. (*Id.*) Plaintiff had fifteen exhibits; Defendant had eighteen exhibits and the Hearing Officer admitted another sixteen exhibits. (A.D. HOD [5–1] at 122–24.)

Upon review of the record in this case, the undersigned recommends that counsel's hourly billing rates should be calculated as three-quarters of the applicable *Laffey* rates for S.R., C.G., L.J., I.M. and A.D., and the full applicable *Laffey* rates for E.J.

### d. Travel Time

In this circuit, travel time is generally billed at no more than half of counsel's appropriate hourly rate. *Douglas v. District of Columbia*, 67 F.Supp.3d 36 (D.D.C. 2014) (citing *Cooper v. United States R.R. Ret. Bd.*, 24 F.3d 1414, 1417 (D.C.Cir. 1994)); *A.C. ex rel Clark v. District of Columbia,* 674 F.Supp.2d 149, 159 (D.D.C. 2009); *Doe v. Rumsfeld,* 501 F.Supp.2d 186, 193 (D.D.C.2007) (same). Accordingly, the undersigned recommends that hours billed for travel be reimbursed at a rate equivalent to 50% of the adjusted hourly rates.

### e. Clerical Type Tasks

The undersigned notes that some of the work billed by Plaintiffs' counsel was for tasks such as copying, paginating, numbering, tabbing and hole-punching documents, which are clerical/administrative tasks rather than legal tasks. (Billing Records [5–2].) [23] *See In re Olson*, 884 F.2d 1415, 1426–27 (D.C.Cir.1989) (acknowledging that "such services are generally considered within the overhead component of a lawyer's fee.") *But see Bailey v. District of Columbia,* 839 F.Supp. 888, 891 (D.D.C. 1993) (wherein the court determined that attorneys operating as solo practitioners or in small firms should not be denied compensation just because they may lack the resources to retain junior lawyers who could handle such tasks more economically); *Bucher v. D.C.,* 777 F.Supp.2d 69, 75–76 (D.D.C.2011) (relying on *Bailey*). In *Bucher, id.* at 76, the court rejected lowering the hourly rate for an attorney performing activities such as telephoning the

---

**23.** *See, e.g.* S.R. Billing Records [5–2] at 7 (3     hours on 7/23/13).

client or corresponding with an expert witness.

Unlike the tasks at issue in *Bucher*, which may have had a substantive component, the tasks flagged by the undersigned are purely clerical/administrative. Furthermore, the *Bailey* and *Bucher* cases do not prevent an attorney who is billing for clerical/administrative tasks, which could be handled by a paralegal, from adjusting his fee rates downward with regard to performance of such tasks. Accordingly, the undersigned recommends that Plaintiffs should be reimbursed for counsel's clerical/administrative work at an hourly rate equivalent to three-quarters of applicable *Laffey* rate for paralegals, or in the case of E.J., at the applicable *Laffey* rate for paralegals.

#### D. Late Charges

Plaintiffs assert that "[b]ecause of the District's long history of ignoring the timelines of orders for payment of IDEA attorneys' fees, *see Thomas v. D.C.*, 908 F.Supp.2d 233, 245–46 (D.D.C.2012) *appeal dismissed sub nom. Thomas v. D.C.*, No. 13–7010, 2013 WL 1187428 (D.C.Cir. Mar. 14, 2013), the Court should also order that the District pay an additional $3,000.00 for each delay of a month or part thereof in payment." (Motion at 8.) Plaintiffs' request for late charges based on a delay in payment is unwarranted in light of the fact that the trial court has not yet made a determination on reasonable attorney's fees. Accordingly, the undersigned recommends that late charges be denied.

#### E. Costs

■ Plaintiffs requested $0.25 per page for copying, $1.00 per page for facsimiles, and $0.56 per mile in mileage.[24] Costs for copying, faxing and postage are customarily included in fee awards in IDEA litiga-

tion. *Holbrook v. District of Columbia*, 305 F.Supp.2d 41, 46 (D.D.C.2004). In the absence of any proof that Plaintiffs incurred costs of $0.25 per page for copying and $1.00 per page for faxing, the undersigned recommends that copying and fax costs at the rate of $0.15 per page would be more reasonable. *See Johnson v. District of Columbia*, 850 F.Supp.2d 74, 81–82 (D.D.C.2012); *see also McClam v. District of Columbia*, 808 F.Supp.2d 184, 190–91 (D.D.C.2011) (concluding $0.25 per page was excessive.)

Plaintiffs' Billing Records also indicate charges for "travel costs" without further explanation. (Billing Records [5–2].) These charges do not coincide with mileage charges so they are not likely to be parking charges; they may however be charges for public transportation. Defendant has not specifically contested these charges and they are thus recommended to be permitted.

### IV. RECOMMENDATION

The undersigned recommends that, for the reasons stated above, Plaintiffs' Motion for Summary Judgment [5] be granted in part and denied in part and Defendant's Cross–Motion for Summary Judgment [8] be granted in part and denied in part.

#### S.R.

In S.R.'s case, Plaintiff's counsel, Mr. Ostrem, documented 95.6 hours, with 89.1 hours at $402.00/hour, and 6.5 hours at $201.00/hour totaling $36,823.20. (S.R. Billing Records [52].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 2.3 hours for unrelated work, .5 hours for settlement conference, and 1.5 hours for travel

---

**24.** Where travel charges have been recommended to be denied, the accompanying mileage costs should also be excluded.

to and from settlement conference leaving a total of 86.3 work hours and 5.0 travel hours

- Application of a billing rate of $217.50/hour for 8.5 hours spent on legal work prior to June 1, 2013, totaling $1,848.75
- Application of a billing rate of $221.25/hour for 74.8 hours spent on legal work on or after June 1, 2013, totaling $16,549.50
- Application of a billing rate of $110.63 (50% of $221.25) for 5.0 hours of travel time, totaling $553.15
- Application of a billing rate of $108.75/hour for 3.0 hours spent on clerical work, totaling $326.25

The undersigned thus recommends that Plaintiff S.R. is entitled to attorney's fees of $19,277.65 and costs in the amount of $ 140.61, totaling $19,418.26.

### C.G.

In C.G.'s case, Plaintiff's counsel documented 104.6 hours: 88.9 hours at $402.00/hour; 10.7 hours of travel time at $201.00/hour; and 5.0 hours at $175.00/hour for I.J. Holman. (C.G. Billing Records [5–2].) Counsel voluntarily excluded charges for 4.0 hours bringing the total hours billed at $402.00/hour down to 84.9, with fees now totaling $37,155.50. (C.G. Billing Records [5–2].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 5.0 hours for I.J. Holman, an educational advocate
- Disallowance of 1.5 hours of travel time prior to the filing of the due process complaint and 1.5 hours of travel time for attending the settlement conference, leaving a total of 7.7 hours of travel time
- Application of a billing rate of $217.50/hour for 56.8 hours spent on legal work prior to June 1, 2013, totaling $12,354.00

- Application of a billing rate of $221.25/hour for 24.4 hours spent on legal work on or after June 1, 2013 but before June 1, 2014, totaling $5,398.50
- Application of a billing rate of $225.00/hour for 1.2 hours spent on legal work on or after June 1, 2014, totaling $270.00
- Application of a billing rate of $108.75.00/hour for 3.0 hours travel time and at a billing rate of $110.88/hour for 4.7 hours travel time, together totaling $847.39
- Application of a billing rate of $108.75/hour for 2.5 hours spent on clerical work, totaling $271.88

The undersigned thus recommends that C.G. is entitled to attorney's fees in the amount of $19,141.77 and costs in the amount of $156.94, totaling $19,298.71.

### L.J.

In L.J.'s case, Plaintiff documented 58.4 hours: 55.4 hours at $402.00/hour and 3.0 hours of travel time at $201.00/hour. (J.L. Billing Records [5–2].) Counsel voluntarily excluded charges for .4 hours bringing the total hours billed at $402.00/hour down to 55.0, with fees totaling $22,713.00 (J.L. Billing Records [5–2].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 1.5 hours of travel time for a settlement conference and .8 hours for attending the conference, leaving a total of 54.2 hours, billed at $402.00/hour, and 1.5 hours of travel time
- Application of a billing rate of $221.25/hour for 52.2 hours, totaling $11,549.25
- Application of a billing rate of $110.63 for 1.5 hours travel time, totaling $165.95

- Application of a billing rate of $108.75 for 2.0 hours spent on clerical work, totaling $217.50

The undersigned thus recommends that L.J. is entitled to attorney's fees in the amount of $11,932.70 and costs in the amount of $102.60, totaling $12,035.30.

### I.M.

In I.M.'s case, Plaintiff documented 126.2 hours: 109.9 hours at $402.00/hour; 8.5 hours of travel time at $201.00/hour; and 7.8 hours at $175.00/hour for S. Millis. (I.M. Billing Records [5–2].)[25] Counsel voluntarily excluded charges for 4.6 hours bringing the total hours billed at $402.00 down to 105.3, with fees now totaling $45,404.10. (I.M. Billing Records [5–2].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 7.8 hours for S. Millis, an educational advocate
- Disallowance of 1.0 hours for attending the settlement conference and 1.5 hours of travel to the conference, leaving a total of 104.3 hours billed at $402.00/hour and 7.0 hours of travel time
- Application of a billing rate of $217.50/hour for 87.8 hours spent on legal work prior to June 1, 2013, totaling $19,096.50
- Application of a billing rate of $221.25/hour for 13.0 hours spent on legal work on or after June 1, 2013, totaling $2,876.25
- Application of a billing rate of $108.75/hour for 6.0 hours travel time, and a billing rate of $110.63 for 1.0 hour travel time, together totaling $763.13
- Application of a billing rate of $108.75/hour for 3.5 hours spent on clerical work, totaling $380.63

- Fees totaling $23,116.51 are reduced by fifty percent (50%) because of partial prevailing party status

The undersigned thus recommends that I.M. is entitled to attorney's fees in the amount of $11,558.26 and costs in the amount of $247.75, totaling $11,806.01.

### E.J.

In E.J.'s case, Plaintiff documented 149.7 hours: 135.0 hours at $402.00/hour; 7.7 hours of travel time at $201.00/hour; and 7.0 hours at $175.00/hour for I.J. Holman. (E.J. Billing Records [5–2].) Counsel voluntarily excluded charges for 1.3 hours at $402.00/hour and 2.5 hours at $175.00/hour, bringing the total hours billed at $402.00/hour down to 133.7, and hours billed at $175.00/hour down to 4.5, with fees totaling $56,082.60. (E.J. Billing Records [5–2].) The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 4.5 hours for I.J. Holman, an educational advocate
- Disallowance of certain time pre-dating the drafting of the Due Process Complaint, including 3.2 hours of travel time billed at $202.00/hour and 27.7 hours billed at $402.00/hour, leaving 106 hours billed at $402.00/hour and 4.5 hours billed at $201.00/hour
- Disallowance of 1.5 hours for attending the settlement conference and 1.5 hours for traveling to the settlement conference, leaving 104.5 hours billed at $402.00/hour and 3.0 hours billed at $201.00.
- Application of a *Laffey* billing rate of $290.00/hour for 2.3 hours spent on legal work prior to June 1, 2013, totaling $667.00

---

**25.** One of counsel's travel charges, dated 5/29/2013, is erroneously billed at $402.00/ hour instead of $201.00/hour so the undersigned has adjusted the total amount billed.

- Application of a *Laffey* billing rate of $295.00/hour for 98.2 hours spent on legal work on or after June 1, 2013, totaling $28,969.00
- Application of billing rate of $147.50/hour for 3.0 hours travel time, totaling $442.50
- Application of a *Laffey* billing rate of $145.00 for 4.0 hours spent on clerical work, totaling $580.00
- Fees totaling $30,658.50 are reduced by thirty percent (30%) to account for partial prevailing party status

The undersigned thus recommends that E.J. is entitled to attorney's fees in the amount of $21,460.95 and costs in the amount of $330.75, totaling $21,791.70.

### A.D.

In A.D.'s case, Plaintiff documented 76.5 hours: 68.0 hours at $402.00/hour and 8.5 hours of travel time at $201.00/hour. (A.D. Billing Records.) Counsel voluntarily excluded charges for 7.2 hours at $402.00/hour bringing the total hours billed at $402.00 down to 60.8, with fees now totaling $26,150.10. The undersigned recommends a reduction in hours and hourly rates as follows:

- Disallowance of 17.8 hours, which represents 7.0 hours of travel time billed at $201.00/hour (which includes 1.5 hours travel time for the settlement conference), and 10.8 hours billed at $402.00/hour (which includes 1.0 hour for the settlement conference), leaving a total of 1.5 hours of travel time and 50.0 hours billed at $402.00/hour
- Application of an hourly billing rate of $217.50 for 4.5 hours billed prior to June 1, 2013, totaling $978.75
- Application of an hourly billing rate of $221.25 for 39.9 hours billed between June 1, 3013 through May 31, 2014, totaling $8,827.88

- Application of an hourly billing rate of $225.00 for 2.6 hours billed after June 1, 2014, totaling $585.00
- Application of an hourly billing rate of $110.63 for 1.5 hours of travel time, totaling $165.95
- Application of a billing rate of $108.75 for 3.0 hours spent on clerical work, totaling $ 326.25
- Fees of $10,883.83 reduced by fifty percent (50%) to reflect partial prevailing party status

The undersigned thus recommends that A.D. is entitled to attorney's fees in the amount of $5,441.92 and costs in the amount of $125.70, totaling $5,567.62.

## V. *REVIEW BY THE DISTRICT COURT*

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

DATED: June 2, 2015